Argued March 18, affirmed March 24, 1925.

## SAM MOTHERSHEAD v. CLARENCE N. YOUNG.

(234 Pac. 299.)

**Taxation—Statutory Directions for Guidance of Officers in Levy and Collection of Taxes are Directory.**

1. Statutory directions for guidance of officers in levy and collection of taxes are directory in so far as they affect validity of tax, in view of Section 4354, Or. L.

**Taxation—Tax Roll Held Valid and Taxes Noted Thereon Collectible in Absence of Showing of Abuse of Taxpayer's Rights.**

2. Where legal process for compiling budget, equalizing assessment, and other steps culminating in delivery of tax roll to sheriff and tax collector, were pursued in manner required by statute, though at later times than those prescribed tax roll was valid and taxes noted thereon collectible in absence of a showing that taxpayer's rights were abused by the irregularity.

From Harney: DALTON BIGGS, Judge.

---

1. See 26 R. C. L. 355.

In Banc.

For appellant there was a brief and oral argument by *Mr. J. S. Cook.*

For respondent there was a brief and oral argument by *Mr. V. G. Cozad.*

BURNETT, J.—The plaintiff is a taxpayer residing in Harney County and sues the defendant who is sheriff and tax collector of that county, seeking to have the tax roll in the hands of the defendant adjudged to be void and of no effect, and to restrain the defendant sheriff from collecting the taxes indicated on that roll. From the pleadings and stipulation of facts, it appears that the assessor did not complete and lay before the county board of equalization, a meeting of which was held on September 9, 1924, any tax roll and did not give notice of such meeting. It appears that the county judge and county clerk met as members of the board of equalization, adjourning from day to day until October 8, 1924, but did nothing in the way of equalization or correcting of the tax roll because it had not been delivered to them. As a result of a recall election held in that county at the same time as the general election in November, 1924, the county judge and one commissioner were recalled. The third member of the court resigned. A new assessor was elected and qualified as of January 5, 1925. At the December term, 1924, the County Court estimated the tax to be levied for that year, reported it to the county assessor and county clerk and thereafter the county assessor computed the assessment rate to be levied, using as a basis, the amount of $8,971,951, that being

the amount which now appears on the roll in the hands
of the sheriff, while the County Court at the time it
made its estimates, apportionment and levy, had
before it as the value of the taxable property, a lesser
amount of $8,503,852.72, which last amount was ob-
tained from a purported summary made by the then
assessor as the total assessed valuation of the prop-
erty in the county. At the January term, 1925, of
the County Court, that body made an order to the
effect that the assessor give notice of a meeting of
the board of equalization to take place on February 6,
1925, for the purpose of equalizing the taxes and
making such corrections of the roll as were required,
and that the assessor complete the roll and lay it
before the board at that date. In brief, the legal pro-
cess for compiling the budget, equalizing the assess-
ment, correction of errors and other subsequent steps
culminating in the delivery of the tax roll to the sheriff
and tax collector with a warrant annexed thereto com-
manding him to collect the taxes specified therein,
was pursued in the manner required by the statute
except that the times at which such actions were taken
were later than those prescribed by the statute.

The question is whether the roll, the resultant
of all this postponed process is regular and valid
and whether the taxes noted thereon collectible. As
said by Mr. Justice HARRIS in *State ex rel.* v. *Johnson*,
80 Or. 107 (156 Pac. 579):

"The taxpayers received notice of the budget and
of the tax which the board proposed to levy; and
every step was taken which the law points out for
the protection of the taxpayer. Under the circum-
stances presented by the record the time when the
second levy was made was not of the essence of the
tax, because the taxpayers received the same notice

that they would have received had the notice been given and the levy made before the first day of December. While it is true that the law contemplates that the officers will all perform their respective duties within specified times, and that the method provided for assessing and taxing property will be followed promptly and without delay in a systematic and orderly manner, nevertheless it would be sacrificing substance for form, and essence for ceremony, to nullify the levy made on December 30th, especially when it is remembered that the assessor still had the roll in his possession and ample time remained for extending the second tax before the assessor was required to deliver the roll to the tax collector."

1. This excerpt is supported by numerous authorities cited in the opinion.

That these directions enunciated in the statute for the guidance of officers are directory so far as they affect the validity of the tax is taught in principle by Section 4354, Or. L., relating to foreclosure of the tax lien, wherein it is said:

"and no assessment of property or charge for any of said taxes shall be considered illegal on account of any irregularity in the assessment rolls, or on account of the assessment rolls not having been made, completed or returned within the time required by law, or on account of the property having been charged or listed in the assessment or tax rolls without any name, or with any other name than that of the owner; and no error or informality in the proceedings of any of the officers connected with the assessment, equalization, levying or collection of taxes shall vitiate or in any manner affect the tax or the assessment thereof; and any irregularities or informalities in the assessment-rolls or tax rolls, or in any of the proceedings connected with the assessment or levy of such taxes, or any omission or defective act of any officer or officers connected with the assessment, equalization, levying or collection of such taxes may,

in the discretion of the court, be corrected, supplied and made to conform to law by the court.''

If after all the labor of preparing assessment rolls, levying of taxes, collection of the same by the sheriff, no advantage can be taken of previous mistakes of the officers, much less on principle can they be used to attack the assessment roll in the beginning.

2. We may very well conclude that *mandamus* would lie to compel the officers to perform their duties at the time required by the statute, but that is far from saying that their neglect will be allowed to imperil the public revenue. Unless it is made to appear that the assessment roll in question is materially different, to the damage of the plaintiff, from the roll that would have resulted from exact observance of the statute as to matters of time and manner of completing the roll, the suit ought to fail. Under such circumstances the taxpayer's rights do not appear to have been abused. The decree of the Circuit Court dismissing the suit and declaring the tax roll to be valid is affirmed.    AFFIRMED.