Argued March 3, demurrer to alternative writ overruled April 11, 1916.

## STATE EX REL. *v.* JOHNSON.

(156 Pac. 579.)

**Municipal Corporations—Port—Taxation—Validity—Statutes.**

1. Under Section 6121, subdivision 9, L. O. L., as amended by Laws of 1915, page 65, authorizing a port to levy taxes to carry out the purposes of its incorporation and to collect a special tax sufficient to pay the yearly interest on any outstanding bonds, together with any part of the bonds maturing within such year, the levy of a special tax for 1916 when no outstanding bonds matured until 1923 to pay the interest on the bonds and to provide a sinking fund to pay the principal was invalid.

**Municipal Corporations—Port—Taxation—Validity—Budget.**

2. Such tax was also wholly invalid, in that it did not comply with the budget law, as extended by Laws of 1915, page 297, to all corporate organizations having power to levy taxes, and making it unlawful to levy taxes without a previous estimate of the amount of money proposed to be raised by taxation for the ensuing year, and providing for publication of the estimates and a notice of the time and place for a hearing thereon.

**Municipal Corporations—Port—Taxation—Time of Levy—Statutes.**

3. Section 6121, L. O. L., defines the powers exercisable by a port, and provides by subdivision 9, as re-enacted by Laws of 1915, page 65, without substantial change, that the levy shall be made in each year in time to be extended on the tax-rolls with the state and county tax to be collected for the following spring, not later than December 31st of each year. Section 3610, and Sections 3586, 3605, 3612, 3662–3664, as amended by Laws of 1913, page 325, and Sections 3669, 3682 as amended thereby and by Laws of 1915, pages 184, 405, require the assessor to prepare an assessment-roll before the second Monday in September, notice that the board of equalization will meet to correct

errors in the roll on that day, and provides that when the assessment-roll is corrected it shall be returned to the county assessor; that the County Court shall at its December term in each year levy all taxes which it is required to levy, and makes it the duty of each public corporation authorized to levy a tax to notify the county clerk and assessor of the tax levy made by it on or before the first day in December of each year. *Held*, that the legislative scheme for assessment and taxation contemplated that a port should levy its taxes on or before the first day of December in each year.

**Municipal Corporation—Port—Taxes—Delay in Levy—Effect.**

4. Such provisions, not expressly prohibiting the making of a levy after December 1st, are not mandatory, but only directory; so that, where the taxpayers received notice of the tax proposed to be levied, and every step was taken which the law prescribes for their protection, and where the assessor still had possession of the assessment-roll on December 31st, so that he received notice of the levy on December 30th in time to make an extension of the roll, before delivering it to the tax collector, the levy made on that date should have been extended to supersede a former invalid levy.

**Taxation—Correction of Roll—Statutes.**

5. Under Section 3678, L. O. L., as amended by Laws of 1913, page 333, providing that, whenever in the collection of taxes the officer having charge of the rolls shall discover errors, he may properly correct them to conform to the facts as may be necessary to make such assessment regular and valid, the sheriff, having an assessment-roll of an invalid port tax not extended by the assessor, might be required to extend a subsequent valid tax.

Original proceeding in Supreme Court.

In Banc.    Statement by MR. JUSTICE HARRIS.

Upon the petition of the Port of Bay City, a municipal corporation, this court, in the exercise of its original jurisdiction, issued a writ of *mandamus* commanding C. A. Johnson, as assessor, and H. Crenshaw, as sheriff of Tillamook County, to amend an assessment-roll or to show cause for not making the amendment. The writ contains a recital of all the facts.    The authority conferred upon ports is exercised by a board of commissioners.    The port is empowered to levy taxes to pay general expenses incurred in carrying out the purposes of its existence, and also to levy a special tax to pay the annual interest and such part of the principal of outstanding bonds as may mature during

the subsequent year. The port had sold its bonds, aggregating $407,000, which bear interest at the rate of 6 per cent per annum, payable semi-annually, but no part of the principal of any bond becomes due until May 1, 1923. Before attempting to levy a tax to be collected in 1916, a written estimate of the receipts and disbursements for that year was prepared, and among the estimated disbursements was an item of $3,000 for a sinking fund. The officers of the port believed that they possessed authority to provide a sinking fund for the retirement of the outstanding bonds, and consequently on November 17, 1915, they made a levy of 3½ mills on the dollar of the taxable property within the boundaries of the municipal corporation, based upon the written estimate of receipts and disbursements. No attempt was made to comply with Chapter 234 of the Laws of 1913, commonly known as the budget law, for the reason that the officers did not know that Chapter 222 of the Laws of 1915 extended the budget law to all taxing agencies except certain cities. On November 18, 1915, notice of the levy was given to the county assessor, who extended the tax upon the assessment-roll.

Afterward the port officers were advised that they could not lawfully levy a special tax to provide for a sinking fund for the retirement of outstanding bonds, and that they could only levy a special tax to pay the yearly interest and the principal of such bonds as matured within the year when the taxes were to be collected. Acting upon advice, the commissioners held a special meeting on December 8, 1915 and at that time annulled the tax levy which had been made on November 17, 1915, made an estimate of the amount of money proposed to be raised by taxation for the ensuing year, ordered that a meeting of the taxpayers of the port be

held on December 30, 1915, for the purpose of discussing the budget for the year 1916, and directed a publication of the budget and a notice of the meeting to be held. This budget contained an estimate for the interest due on the bonds for 1916, but no provision was made for a sinking fund. The county assessor was notified of the action taken at the meeting held on December 8th; and the budget, together with a notice of the meeting, was published in an official newspaper of the county. On December 28th the county assessor addressed a letter to the port saying that he had already extended the 3½-mill levy on the assessment-roll, on the assumption that the budget law had been complied with, and that he would "refuse to extend any levy that may be made by you next Thursday." The board of commissioners met on December 30, 1915, pursuant to the published notice for the purpose of hearing any discussion of the budget but no taxpayers appearing, the board levied a tax of 3.1 mills on the dollar of the taxable property in the port to pay the necessary expenses for the year 1916. On December 31st the county assessor and the county clerk were served with a written notice of the action taken by the board on December 8th and of the levy made on December 30th. The assessor refused to extend the levy of 3.1 mills upon the assessment-roll or to cancel the levy of 3½ mills which he had already extended. The assessor had possession of the roll when the second levy was made, but when the petition for the writ was filed on February 24, 1916, the roll was in the hands of the sheriff whose duty it is to collect the taxes. The defendants demurred to the writ. On March 16, 1916, we overruled the demurrer in an oral decision; and this written opinion is intended to explain that decision.

DEMURRER TO ALTERNATIVE WRIT OVERRULED.

For relator there was a brief and an oral argument by *Mr. John M. Gearin.*

For defendants there was a brief over the names of *Mr. T. H. Goyne,* District Attorney, and *Mr. Isaac H. Van Winkle,* Assistant Attorney General.

MR. JUSTICE HARRIS delivered the opinion of the court.

The relator argued that the tax levied on November 17th was illegal because: (1) The levy included a special tax to provide for a sinking fund to be applied on the principal of the bonds as they became due; and (2) the budget had not been published as required by law. At the hearing the relator assumed that the order canceling the first levy, the making of the second levy, and the notice to the assessor and county clerk occurred within the time permitted by law for making and giving notice of tax levies, and therefore it was contended that the second levy should be extended upon the tax-roll in lieu of the first levy which had been extended by the assessor.

1. A port is empowered to levy taxes to carry out the purposes for which it is incorporated, and also to collect a special tax sufficient to pay the yearly interest on any outstanding bonds, "together with any portion of the principal of such bonds maturing within such year": Subd. 9, Section 6121, L. O. L., as amended by Chapter 53, Laws 1915. In addition to the "regular annual tax" to defray the general expenses of the port, the levy made on November 17th included a "special tax" to pay the interest on bonds and to provide for a sinking fund which would ultimately be used to pay the principal of the bonds. It will be remembered that no outstanding bond matures until May 1, 1923, and con-

sequently the commissioners exceeded their authority when they attempted to levy a special tax for more than "an amount sufficient to pay the yearly interest on bonds theretofore issued by such corporation and then outstanding."

2. In 1915 the budget law was made applicable to "all districts and corporate bodies or organizations having power to levy taxes," except certain cities: Chapter 222, Laws 1915. The budget law provides that it shall be unlawful for any taxes to be levied unless the estimate is first made of the amount of money proposed to be raised by taxation for the ensuing year. The estimates, together with a notice of the time and place at which such estimates may be discussed, must be published at least twice before the proposed meeting in the official county newspaper. The officers whose duty it is to levy the tax are required to be present at the time and place stated in the notice, and, if no taxpayer shall appear to discuss the proposed tax, they shall proceed to make a levy. The budget law was not observed in making the first levy, but it was complied with before making the second levy on December 30th. The tax imposed on November 17th was invalid to the extent that it attempted to provide for a sinking fund; and the failure to comply with the budget law affected the levy in its entirety.

3. The county officers cannot be compelled to extend the second tax unless it was legally levied. When the questions presented by the demurrer were argued by counsel, the relator proceeded upon the theory that the levy made on December 30th was within the time fixed by law, on the assumption that the port had until the first day of January to levy the tax. Prior to 1913 taxing agencies, like ports, did have until the first day of January to levy a tax, but in that year the time was changed to the first day of December.

We can better understand the questions involved by first noting the various steps required before 1913, and then observing the changes made by the amendatory legislation. The assessor was required to prepare an assessment-roll on or before the third Monday of October: Section 3586, L. O. L. The assessor complied with Section 3605, L. O. L., by giving notice that on the third Monday in October the board of equalization would correct any errors in the assessment-roll; and it was the duty of interested persons to appear. At the expiration of one month from the time the board of equalization was required to meet the correction "of said assessment-rolls shall be deemed to be complete" (Section 3610, L. O. L.); and the assessment-rolls were then returned to the county clerk (Section 3612, L. O. L.). All the taxes levied by the County Court for county and other purposes were required to be levied at its January term in each year (Sections 3662, 3663, L. O. L.); and it was the duty "of each public corporation authorized to levy a tax, to notify, in writing, the county clerk of the county * * of the tax levy made by it, on or before the first day of January in each year" (Section 3664, L. O. L.). After receiving all the notices provided for in Section 3664 and apportioning taxes, it became the duty of the clerk forthwith to make and deliver a certificate to the tax collector, together with the assessment-roll (Section 3669, L. O. L.); and finally Section 3682, L. O. L., declared that "taxes legally levied and charged in any year may be paid on or before the first Monday of April following and if not so paid they shall become delinquent."

Each of these Code sections, except Section 3610, was amended by Chapter 184 of the Laws of 1913, and Section 3669 was again amended by Chapter 276 of the

Laws of 1915, and Section 3682 was likewise amended by Chapter 156 of the Laws of 1915, so that the assessor is now required to prepare an assessment-roll "before the second Monday in September" (Section 3586, as amended); notice is given that the board of equalization will meet and correct errors in the roll on the second Monday in September; when the assessment-roll is corrected by the board of equalization, it is returned to the county assessor; the County Court for each county shall at "its December term in each year" (Sections 3662, 3663, as amended) levy all taxes which it is required to levy; it is the duty "of each public corporation authorized to levy a tax, to notify, in writing, the county clerk and the county assessor * * of the tax levy made by it, on or before the first day of December in each year" (Section 3664, as amended); after receiving all the notices provided for in Section 3664, and after the apportionment of taxes, the assessor "shall forthwith * * make a certificate, in duplicate, of the several amounts apportioned to be assessed upon the taxable property in his county for state, county, * * port or other purposes for which a tax may have been legally levied" (Section 3669, as amended), and attach one copy of the certificate to the assessment-roll containing the total amount of taxes properly extended and entered thereon, against the property assessed to each individual; the assessor "shall deliver said roll to the tax collector not later than 45 days prior to the date provided by law when a' penalty or interest charge is made for the nonpayment of any tax or part of tax indicated in said roll" (Section 3669, as amended); the first half of all taxes legally levied and charged shall be paid on or before the fifth day of April, and interest shall be collected if not so paid.

The powers exercisable by a port are enumerated in Section 6121, L. O. L.   Subdivision 9 of that section authorizes a port to levy taxes, but the amount "shall be levied in each year in time so as to be extended upon the county tax-rolls with the state and county tax for the annual collection of taxes in the spring next following, but in no event later than the thirty-first day of December in each year."   Chapter 53 of the Laws of 1915, amended Section 6121 by adding to the powers granted to ports, but the amendment merely re-enacted subdivision 9 without any changes.   Section 3662 was enacted in 1907 while Section 6121 was passed in 1909, and it is clear that the latter section was framed so as to harmonize with Sections 3662, 3663 and 3664.   The framers of Chapter 53 of the Laws of 1915 were probably not aware of the change made in 1913, when the legislature directed tax levies to be made on or before the first day of December.   Construing all ·the legislation together, it is clear, however, that the scheme provided for assessment and taxation contemplates that a port will levy its taxes on or before the first day of December in each year, along with all other taxing agencies; and this brings us to a consideration of the effect of the second levy.

4. If the statute fixing the time for making the levy and giving notice to the assessor and county clerk is mandatory, then the levy was void; but the tax is valid if the legislation is only directory.   No words are to be found in the statutes prohibiting the making of a levy after the first day of December.   It appears that the assessor still had possession of the assessment-roll on December 31st, and had not delivered it to the tax collector, and therefore the assessor received notice of the levy in time to make the extension on the roll: *Taylor* v. *McFadden,* 84 Iowa, 262 (50 N. W. 1070).

In *French* v. *Edwards,* 13 Wall. 506 (20 L. Ed. 702), is found the oft-quoted language of Mr Justice FIELD:

"There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory, but mandatory."

See, also, *Lewis* v. *Blackburn,* 42 Or. 114 (69 Pac. 1024). In *Hooker* v. *Bond,* 118 Mich. 255 (76 N. W. 404) the court held that:

Jurisdiction is not lost "by the failure of any officer to perform the acts imposed upon him within the time fixed by the law, unless the taxpayer is deprived of some right, or unless the law, by negative language, prohibits the doing of the act at any other time."

The taxpayers received notice of the budget and of the tax which the board proposed to levy; and every step was taken which the law points out for the protection of the taxpayer. Under the circumstances presented by the record the time when the second levy was made was not of the essence of the tax, because the taxpayers received the same notice that they would have received had the notice been given and the levy made before the first day of December. While it is true that the law contemplates that the officers will all

perform their respective duties within specified times, and that the method provided for assessing and taxing property will be followed promptly and without delay in a systematic and orderly manner, nevertheless it would be sacrificing substance for form, and essence for ceremony, to nullify the levy made on December 30th, especially when it is remembered that the assessor still had the roll in his possession and ample time remained for extending the second tax before the assessor was required to deliver the roll to the tax collector. The assessor should have eliminated the first levy and extended the second tax; and this conclusion is supported by many authorities: *Perry County* v. *Selma etc. R. R. Co.,* 65 Ala. 391; *Easton* v. *Savery,* 44 Iowa, 654; *Wingate* v. *Ketner,* 8 Wash. 94 (35 Pac. 591); *State* v. *Hannibal & St. J. R. Co.,* 113 Mo. 297 (21 S. W. 14); *State ex rel. Anderson* v. *Harris,* 17 Ohio St. 608; *Bright* v. *Halloman,* 7 Lea (Tenn.), 309; *Hallo* v. *Helmer,* 12 Neb. 87 (10 N. W. 568); *State* v. *Horner,* 34 Md. 569; *Baltimore C. & A. Ry. Co.* v. *Commissioners,* 93 Md. 113 (48 Atl. 853); *Kipp* v. *Dawson,* 31 Minn. 373 (17 N. W. 961, 18 N. W. 96); *Hart* v. *Plum,* 14 Cal. 148; *Walker* v. *Edmonds,* 197 Pa. 645 (47 Atl. 867); *State* v. *West Duluth Co.,* 75 Minn. 456 (78 N. W. 115); *Hill* v. *Wolfe,* 28 Iowa, 577; *Sharpe* v. *Engle,* 2 Okl. 624 (39 Pac. 384); *Anderson* v. *City of Mayfield,* 93 Ky. 230 (19 S. W. 598); *State* v. *Northern Belle M. Co.,* 15 Nev. 385; *Pond* v. *Negus,* 3 Mass. 230 (3 Am. Dec. 131); *Williams* v. *School District,* 21 Pick. (Mass.) 75 (32 Am. Dec. 243); *Board of Supervisors* v. *Betts,* 53 Hun, 638 (6 N. Y. Supp. 934).

5. The tax not having been extended by the assessor, and the roll being in the hands of the sheriff, the extension must now be made by the latter, who traces his authority to correct the roll to Section 3678, L. O. L.,

as amended by Chapter 184 of the Laws of 1913, which provides that:

"Whenever, at any stage in the collection of taxes, the officer having charge of the rolls shall discover errors or omissions of any kind therein, he may properly correct the same to conform to the facts in whatever manner may be necessary to make such assessment, tax or other proceeding whatsoever regular and valid": *State* v. *Holcomb,* 81 Kan. 879 (106 Pac. 1030, 28 L. R. A. (N. S.) 251).

It is only fair to say that the refusal of the county officers to correct the roll was not prompted by any contumacy on their part; but they did not know with certainty whether the first or second levy should govern, and declined to make any changes in the records until the doubts were first removed.

DEMURRER TO ALTERNATIVE WRIT OVERRULED.