# THE ANACONDA COMPANY, *Appellant,*
## *v.*
# DEPARTMENT OF REVENUE, *Respondent.*
## (TC 991, SC 24690)
### 565 P2d 1084

Milo E. Ormseth, Portland, argued the cause for appellant. With him on the briefs were Joel D. Kuntz and Davies, Biggs, Strayer, Stoel and Boley.

Walter J. Apley, Assistant Attorney General, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General, Salem.

LINDE, J.

Howell, J., dissenting opinion.

## LINDE, J.

Plaintiff appeals from a decision of the Tax Court sustaining a tax deficiency assessment ordered by the Department of Revenue. *Anaconda Co. v. Dept. of Revenue,* 6 OTR 475 (1976). The main issue presented is the effect of the department's noncompliance with the statute entitling the taxpayer upon request to confer with the department before a final assessment is made.

The department began an audit of an Anaconda subsidiary, the Anaconda Wire and Cable Company, in 1969 to determine whether the subsidiary's taxes should have been reported in combined, unitary returns with those of the parent company. In December 1970 the department sent Wire a deficiency notice proposing to assess $133,526.11 in additional taxes for the years 1965-1968. After a 60-day extension allowed by the department, taxpayer in March 1971 filed a protest and requested a conference. The department replied in April that before scheduling a conference it would have the file reviewed by a Mr. Tepper, who would call the taxpayer.

During the next seven months, however, Mr. Tepper apparently did not get around to this file, and no conference was held or scheduled. In November 1971 the department proceeded to send notices of deficiency assessments to taxpayer, with an explanation that the case was approaching the one-year statutory deadline, ORS 314.410(4), and that Mr. Tepper would contact taxpayer when he could find time to review the file. In reply taxpayer requested withdrawal of the deficiency assessment and offered to extend the deadline for six months pursuant to ORS 314.410(6). It received no response.

Orders assessing a much reduced deficiency and involving both Wire and another subsidiary, the Anaconda American Brass Company, were finally issued in September 1974 and August 1975 after a

belated hearing and other proceedings during 1973-1975. While these proceedings gave rise to a second issue in the Tax Court and on appeal here, we do not reach it if the department's failure to follow the statute invalidated the original assessment.

The assessment of deficiencies in income tax returns is governed by ORS 314.405. Subsection (2) allows the taxpayer 30 days after notice is mailed to pay the deficiency or to protest. The subsection continues:

> If requested by the taxpayer in his written objection to the proposed deficiency, the taxpayer shall have an opportunity to confer with the department or its delegate as to the proposed assessment at any time prior to the date such assessment is made.

Subsection (8) of the same section provides that "deficiency assessments . . . shall be made pursuant to this section, and not otherwise," within specified time limits.

The department concedes that it made the assessment before according taxpayer the requested opportunity to confer, and thus "otherwise" than provided in ORS 314.405. Indeed, the department's own rules recognized that a taxpayer "is entitled to a conference" before the assessment, but after assessment a conference is no longer "a matter of right." OAR 150-314.405(3) (1971). The department argues, however, that it granted taxpayer a post-assessment conference which served the "intent and purpose" of the statute and that its violation of the rule and the statute should not invalidate the assessment. The Tax Court agreed with the department's conclusion on this issue. We reverse.

The Tax Court stated the question to be whether the statutory directive is "mandatory" or "directory," and that this question, in turn, was to be determined as a "general rule" by whether plaintiff can show abridgment of some substantial right by the failure to follow the statute. This approach tends to confuse two

distinct issues. The first concerns the intended effect of a particular statutory requirement. The second is whether failure to follow a required procedure may nevertheless be excused if it did no harm in the individual case.

■ First, it should be clear that the catchwords "mandatory" or "directory" do not serve as premises for deciding whether noncompliance with a prescribed procedure voids administrative action; they are labels for the conclusion. Action is not invalidated *because* a statutory requirement is "mandatory" or permitted to stand *because* the requirement is "directory;" rather, the requirement will be called one or the other according to the effect sought to be attached to noncompliance. Such an issue cannot be decided by examining whether the legislature "directed" that the procedure be followed or "mandated" it, for the issue arises only when the legislative words make compliance obligatory. So understood, the conventional usage of "mandatory" or "directory" may be harmless, but for the risk of encouraging an agency to misconstrue a decision that a procedural failure is not fatal into a holding that compliance is not legally required.

■ Since the question always arises from a particular enactment, there can be no "general rule" for concluding when failure to follow an obligatory procedure nevertheless does not invalidate an action. It is a matter of interpretation, not much helped by general formulas in opinions construing different statutes in this or other states. Statutes are not fungible, and their interpretation is not a form of common law. It is, of course, possible for a legislature to mandate certain procedures while limiting the legal effects of noncompliance, as for instance in the Public Meetings Law,[1] but draftsmen commonly give no attention to the

---

[1] ORS 192.680, which provides for enforcement of the Public Meetings Law by suit, also provides: "No decision shall be voided by the court in a suit under this subsection solely because of a violation . . .", though it has not been decided whether the word "solely" allows invalidation when a plaintiff can show substantial harm related to the violation beyond the mere fact of the violation itself.

matter and leave courts to attribute the more probable intention to the lawmaker. Thus procedures designed to protect individuals dealing with an agency more likely are meant to be "mandatory" than provisions, equally obligatory, that are designed to assure legally and fiscally correct public administration in general, though the text or background of a particular enactment may show otherwise. Similarly the nature and extent of the disadvantage sought to be avoided by the procedure can bear on the probable intent with respect to noncompliance. See *Childs v. Marion County,* 163 Or 411, 97 P2d 955 (1940). Thus a holding setting aside action for failure to comply with one protective requirement of a statute does not necessarily mean that failure to comply with other directives in the same or a similar statute will necessarily lead to the same result. See, for instance, *Childs v. Marion County, supra; Equitable Savings & Loan Association v. State Tax Commission,* 3 OTR 1, *aff'd* 251 Or 70, 444 P2d 916 (1967).

Moreover, in the present case the text and its prior interpretation by the agency charged following it are not silent on the question. ORS 314.405(2) states that "the taxpayer shall have an opportunity to confer" before the assessment is made. This requirement dates from 1933. Oregon Laws 1933, ch 388, § 4. The department's rule recognized it as obligatory. In 1965 subsection (8) of the statute was amended, in the course of legislation concerning a time limit on certain deficiency assessments, to add the words that assessments shall be made "not otherwise" than pursuant to the section. The court in *Childs, supra,* 163 Or at 415, in holding an assessment procedure to be only "directory," had made it a point to note the absence of "negative words importing that the acts shall not be done at any other time than those designated," and cited *State v. Johnson,* 80 Or 107, 156 P 579 (1916) for similar reasoning.[2] We do not know that the 1965

---

[2] "No words are to be found in the statutes prohibiting the making of a levy after the first day of December." 80 Or at 115. *Cf.* also the

amendment reflected awareness of these opinions, and we do not mean to encourage the insertion of "negative words" in already obligatory statutes; but when the legislature does insert such words as it did in 1965, we cannot hold that an assessment may nevertheless be made without compliance with the statute in which they are inserted. Nor can an agency, or the court, substitute for a law made by the legislature another one that in our opinion will serve its "intent and purpose." *Cf. State ex rel Cox v. Wilson,* 277 Or 747, 562 P2d 172 (1977).

The second question is whether taxpayer may not complain of the failure to follow the statute and the department's rule unless it can show substantial harm from the failure, as the Tax Court thought. The fact that a required procedure safeguards the interest of individuals bears on interpreting the legislative purpose to make the requirement "mandatory," as we have stated, but that criterion obviously relates to the interest of taxpayers as a class at the time of enactment, not its extent in the circumstances of a particular case. The right to a preassessment conference in ORS 314.405(2) was doubtless enacted as a significant procedural protection for taxpayers. See *Johnson et ux v. State Tax Comm.,* 218 Or 110, 113-114, 342 P2d 799 (1959). To avoid its application here, the department must demonstrate that its procedural failure in this instance was harmless error, not place on the taxpayer the burden to demonstrate substantial prejudice.[3] Although the effects of delaying the requested conference until after the assessment are disputed, the department has not convinced us that there were none.

emphasis accorded the words "but not otherwise" in *Schaefer v. Montgomery Ward & Co.,* 167 Or 679, 681, 120 P2d 235 (1941).

[3]The Department of Revenue does not have the advantage of a provision like the Administrative Procedure Act's ORS 183.482(8)(a), that "error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby," though perhaps this plaintiff could also meet that standard. See ORS 183.315(1).

■ ■ We have no reason to think that the department's failure to accord taxpayer the requested conference or to respond to its offered extension of the deadline for an assessment resulted from bad faith, neglect, or anything other than the burdens of the department's caseload. But if it is poor economy not to employ sufficient personnel to collect taxes by the procedures the legislature has accorded the public, that argument must be made to the legislature, not the court. As this court concluded in another case involving lack of personnel in the department's predecessor, "[The commission] cannot for convenience or economy avoid its statutory duty." *Portland Canning Co. v. Tax Commission,* 241 Or 109, 114, 404 P2d 236 (1965).

Reversed and remanded.

**HOWELL, J.,** dissenting.

We are not involved in this suit with whether or not Anaconda owed corporate excise taxes for the years involved. That issue was not raised in the pleadings and does not appear to be an issue in the briefs.[1] The sole issue is whether the deficiency assessment made by the Department of Revenue is void for procedural reasons. The majority opinion finds that it is void because the defendant failed to comply with one of the provisions of ORS 314.405 which provides that, upon request, the taxpayer *"shall have an opportunity to confer* with the department or its delegate as to the proposed assessment at any time prior to the date such assessment is made."

In order to understand the specific issue in this case—whether the failure to have "an opportunity to confer" renders the assessment void—an overview of the general deficiency assessment procedure should be expressed.

---

[1] Anaconda paid some corporate excise taxes after the opinion and order of the Department of Revenue was issued. There is some issue as to whether Anaconda Wire is entitled to a refund for overpayment of taxes for 1965 and 1966.

If the department believes from the taxpayer's return that a deficiency exists, it notifies the taxpayer by mailing a notice of proposed deficiency assessment. Within 30 days the taxpayer either pays the deficiency or advises the department why it disagrees with the proposed assessment. If it is requested, the statute provides that the taxpayer shall have the opportunity to confer. ORS 314.405. The department must make the actual deficiency assessment within one year of the date of the notice of the proposed deficiency assessment unless an extension is agreed upon. ORS 314.410. The taxpayer may then appeal to the department where he is entitled to a formal *hearing.* ORS 314.455. Thereafter, he is entitled to appeal to the Tax Court, which conducts a de novo trial, ORS 314.460 and 305.425, and, finally, he is entitled to appeal to the Supreme Court, ORS 305.445.

The majority opinion would invalidate the tax in this case because the statute ORS 314.405 relating to the pre-assessment procedure states that the taxpayer "shall have an opportunity to confer" prior to assessment of the deficiency, and the department admits that no such opportunity was accorded this taxpayer until after the deficiency assessment was made.[2]

The Tax Court held that the statutory language was directory and not mandatory. That is, while the language is obligatory, failure to follow the literal terms of the statute does not automatically extinguish the underlying tax liability. The majority opinion in this court, however, prefers to rely on a strict and literal interpretation of the statutory language quoted above and holds that the assessment is invalid because of the failure to provide an opportunity to confer. Before adopting such an approach, we should carefully consider some of the practical consequences of employing such an exacting standard.

---

[2] The language *"shall have an opportunity to confer"* is nebulous. As a fact, the parties, through some of plaintiff's officers and defendant's auditor in New York, spent considerable time "conferring" over plaintiff's potential tax liability. Also, it is conceded that the parties had a more formal conference after the deficiency was assessed.

ORS 314.405 delineates many other similar pre-assessment procedures which, if the majority opinion is correct, would also appear to be mandatory, and, therefore, the failure to provide any one of them would invalidate the deficiency assessment regardless of the merits of the basic issue of liability for the tax. In the notice of proposed assessment, the department is required to (1) compute not only the deficiency but also the interest due and any additional penalty for fraud; (2) give the reason for each proposed adjustment; and (3) give a reference to the statute, regulation or department ruling relating to the proposed assessment.[3] Each of these procedures seems to have been adopted for the benefit of the taxpayer, and, pursuant to the majority opinion, an inadvertent failure to comply with any one of them would prevent collection of the tax deficiency. Thus, if the department failed to compute the interest due, neglected to mention fraud at this stage of the proceedings, failed to state the reason for one of the proposed adjustments, omitted a reference to one of several applicable regulations or rulings, or cited the wrong provision, the taxpayer would be entitled to raise the procedural question and have the tax invalidated even though there was no question about its liability for the tax.[4] As a result, the

[3] In *Equitable Sav. & Loan v. Commission,* 3 OTR 1 (1967), the Tax Court rejected a similar argument that the assessment was invalid because the notice did not refer to the statute, regulation or ruling. We affirmed on appeal.

[4] The use of one or two hypothetical examples should make the practical disadvantages of adopting the majority approach even more obvious. Assume a large corporation with a tax liability to the state of $1,000,000. It does not seriously dispute the liability determined by the Department of Revenue. As a result of the majority decision, the corporation then looks at the notice of proposed deficiency assessment and finds it deficient in one of the examples I have given. Under the present majority approach, the assessment is invalid and the corporation owes no tax to the state of Oregon. As another example, assume that a taxpayer and the department are negotiating over the amount of tax due, the availability of the taxpayer's records, and whether they must be disclosed to the auditor. No conference is held because of the ongoing arguments. The department eventually assesses the tax because it has to protect itself under the one-year requirements of ORS 314.410. The negotiations continue, the taxpayer finally concedes the merits, but then he says, "I do not owe the tax because you did not give me the 'opportunity to confer' under the statute."

delinquent taxpayer gets a windfall, and the other taxpayers of this state will have to bear a proportionally larger burden.

In support of its position, the majority places substantial reliance upon subsection 8 of ORS 314.405, which provides that:

"Additional assessments and deficiency assessments with respect to any tax return *shall be made pursuant to this section, and not otherwise,* within the time limits prescribed by ORS 314.410 * * *." (Emphasis added.)

This provision was added to the statute in 1965 as a result of the passage of House Bill 1854. The majority construes this language as evidence that the legislature intended that a "mandatory" rather than a "directory" meaning should thereafter attach to its use of the word "shall" in all other sections of the same statute. The legislative history of this provision, however, clearly does not support that construction.

House Bill 1854 was a legislative reponse to our decision in *Atkinson Co. v. Tax Commission,* 239 Or 588, 399 P2d 166 (1965). In that case, this court held that the personal property tax offset provided by subsection 2 of ORS 317.070 applied only to corporations whose *Oregon* activities involved the "manufacturing, processing or assembling" of goods. Prior to that decision, the Tax Commission had looked to the out-of-state as well as the in-state activities of corporations to ascertain whether the company was engaged in "manufacturing, processing or assembling." The effect of the *Atkinson* decision was that many companies previously thought entitled to the offset suddenly became liable for back taxes. Moreover, by virtue of our decision in *Warm Sprgs. Lbr. Co. v. Tax Com.,* 217 Or 219, 342 P2d 143 (1959), no statute of limitations was applicable to these back taxes because the additional tax liability was due to an erroneous offset rather than an erroneous assessment. Several millions of dollars in tax adjustments were involved. The legislature was concerned about this statute of limitations problem

and similar problems which had arisen in other cases involving additional tax liability which were not due to an erroneous "assessment." *See generally* Minutes of the Senate Committee on Taxation, February 22, 1965 and May 3, 1965; Minutes of the House Committee on Taxation, April 7, April 12, April 19 and April 23, 1965.

As the drafter of H.B. 1854 stated in his appearance before the Senate Committee on Taxation:

"* * * I think it has long been felt that there should be no difference between asserting additional taxes by reason of the disallowance of a deduction or the disallowance of a personal exemption or dependency credit or the inclusion of items of income which the taxpayer thought were not properly taxes, and the assertion of additional tax where the taxpayer has in good faith erroneously claimed a credit or offset against the tax. HB 1854 is designed as a general section applicable to all such cases. That is, under this bill as written, if the taxpayer is to be billed for additional taxes not shown on the return as filed, the Commission must make its assertion normally within the three years after the tax is filed. If there is an omission from income, it has five years. In the case of fraud or false returns, there is no time limit. But the section makes it clear that these things are treated as deficiences the same as omitted income or improper deductions or offsets or credits. They are all treated the same. The bill refers only to future years." Minutes of the Senate Committee on Taxation, May 3, 1965.

Thus, the purpose of the 1965 amendment to ORS 314.405 was not to ensure that the procedural provisions of that statute would be applied rigidly, as the majority now proposes, but to provide a time limitation on the assertion of any form of additional tax liability except in fraud cases. *See also* Minutes of the House Committee on Taxation, April 23, 1965:

"Rep. Bazett presented subcommittee report on the above bills, advising that the subcommittee, consisting of himself, Rep. Lent and Rep. Rogers, met with Dean Ellis, Committee Counsel, C. Roberts of the Tax Commission, Jay Hay, Portland attorney, William Hedlund,

representing West Coast Oil Companies, John Misko and Bradon Daggett of the Tax Commission. *It was agreed by the subcommittee that HB 1854 should be the vehicle for establishing a proposed statute of limitations."*

Therefore, the majority's reliance on the 1965 amendment to ORS 314.405 in support of its conclusion that the word "shall" must be given "mandatory" rather than "directory" effect is completely misplaced. The 1965 amendment adding the "not otherwise" language was concerned with curing the statute of limitations problem and it simply had absolutely nothing to do with the problem now before this court. In light of the significant practical disadvantages of adopting a rigid and inflexible approach to the procedural requirements of ORS 314.405, I do not feel that we should broaden the application of the 1965 amendment beyond the problem which that provision was designed to remedy, and I would not construe the amendment to apply to all procedural provisions of ORS 314.405, for I find no evidence that the legislature intended such a construction.

As this court stated in *Childs v. Marion County,* 163 Or 411, 97 P2d 955 (1940), which was also a tax case involving procedural irregularity:

> "The principle of construction applicable to this subject is thus well stated in 2 Lewis' Sutherland Statutory Construction (2d Ed.) 1116, § 611:
>
> " 'Unless a fair consideration of a statute, directing the mode of proceeding of public officers, shows that the legislature intended compliance with the provision in relation thereto to be essential to the validity of the proceeding, it is to be regarded as directory merely.' * * *." 163 Or at 414-15.

I find no evidence that the legislature intended such a construction of this statute. As this court concluded in *Childs,* I believe that the procedural provisions of ORS 314.405 were

> " 'designed to secure order, system and dispatch in proceeding', and, while the legislature undoubtedly intended that public officers should obey them, otherwise they

would not have been enacted, it was not the intention, we think, to stamp them with the character of essential acts, the failure to perform which at the exact times prescribed would vitiate everything that might thereafter be done. * *· * We do not think that any such absurdity was contemplated by the legislature." Id. at 415-16.

Although the majority has chosen to avoid specifically doing so, it is apparent to me that the practical and unavoidable effect of today's decision is to overrule the decision in *Childs v. Marion County, supra,* as well as *Equitable Savings & Loan v. Tax Com.,* 251 Or 70, 444 P2d 916 (1968), *affirming* 3 OTR 1 (1967), at least by implication. However, it is my view that these cases were correctly decided and that, at least in the absence of any affirmative indication that the legislature intended a different result, we should continue to follow the rationale of those decisions.

It is also significant that the federal courts, when considering a similar issue arising under federal law, have uniformly held that regulations calling for a pre-assessment conference were directory rather than mandatory and that a failure to provide a conference prior to a deficiency assessment was not fatal. In *Luhring v. Glotzbach,* 304 F2d 560 (4th Cir 1962), for example, the court, in holding that the provisions of 26 C.F.R. §§ 601.105 and 601.106 were directory rather than mandatory, made the following observations:

"Even if it should be supposed that the procedural rules have the same authority as if they had been issued by the Commissioner with the approval of the Secretary in strict conformity to Section 7805, their *directory* character would still be apparent. Obviously, they are rules to govern the conduct of the agents of the Internal Revenue Service in the performance of their duty to determine the correctness of the income tax returns of the taxpayers. They are carefully devised to avoid litigation in disputed cases by affording an opportunity to the taxpayer to agree with examining agents in adjustments of the tax shown on the return and by authorizing the representatives of the Commissioner to enter into compromises and settlements when complete

agreement cannot be had. To this end, if a return has been audited and found to be incorrect the taxpayer is notified and given an opportunity to agree to the changes suggested by the agent and, if no agreement is reached, further informal conferences between the taxpayer and the Government agents may be had in the auditing office of the District Director and later with the Appellate Board of the District. Obviously, this pretrial procedure is of great value both to the taxpayer and to the Government in composing disputed questions of fact and law and avoiding the delay and expense of litigation; and it is so much to the interest of the parties that it is customarily employed. We think, however, that the rules are *directory* and not *mandatory* in legal effect, and they do not curtail the power conferred upon the Secretary of the Treasury or his delegate by § 6212, I.R.C. to send a notice of deficiency if he determines that there is a deficiency in the tax shown on the taxpayer's return." (Footnote omitted; emphasis added.) *Id.* at 564-65.

To the same effect *see Smith v. United States,* 478 F2d 398, 400 (5th Cir 1973); *Rosenberg v. C.I.R.,* 450 F2d 529, 531-33 (10th Cir 1971); *Cleveland Trust Co. v. United States,* 421 F2d 475, 481-82 (6th Cir), *cert. denied* 400 US 819 (1970); *Crocker v. United States,* 323 F Supp 718, 722-23 (ND Miss 1971). *See also Geurkink v. United States,* 354 F2d 629, 632 (7th Cir 1965).

I am of the opinion that the same effect should be given to the essentially similar pre-assessment conference requirement of ORS 314.405. Moreover, in light of the practical disadvantages which would result, there is simply no reason to construe our own statute differently. Correspondingly, I dissent from the decision reached today by a majority of this court.