Argued and submitted February 1, the decisions of the Court of Appeals and
Employment Relations Board affirmed October 10, 1989

# SALEM POLICE EMPLOYEES UNION,
*Respondent on Review,*

*v.*

# CITY OF SALEM,
*Petitioner on Review.*

## (ERB UP-2-87; CA A43945; SC S35553)

781 P2d 335

Paul A. Lee, Salem, argued the case for petitioner on review. With him on the petition was William J. Juza, City Attorney, Salem.

Michael J. Tedesco, Portland, argued the case for respondent on review. With him on the response was Steve Johansen, Portland.

Frank M. Parisi and C. Akin Blitz, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, filed a brief on behalf of *amici curiae* Oregon State Sheriffs' Association, Oregon Association Chiefs of Police, Oregon Fire Chiefs' Association, Oregon Fire District Directors' Association, Fred Pearce, Multnomah County Sheriff, City of Portland and City of Eugene.

FADELEY, J.

## FADELEY, J.

State law requires public employers and represented employees to bargain in good faith with each other "with respect to employment relations" when either requests bargaining. Refusal to do so when required by law is an unfair labor practice. ORS 243.672(1)(e), 243.650(4), 243.650(7).[1]

Petitioner City of Salem (City) adopted a reserve police officer program. Respondent Salem Police Employees Union (SPEU) demanded an opportunity to bargain about the subject. City refused, claiming that its reserve program is not covered by the statutory term "employment relations." SPEU complained to the Employment Relations Board (ERB) that the refusal was an unfair labor practice and sought relief.

ERB concluded that City's refusal was an unfair labor practice which violated ORS 243.672(1)(e), and the Court of Appeals affirmed. *Salem Police Employees Union v. City of Salem,* 92 Or App 418, 758 P2d 427 (1988). We review to determine whether ERB's decision is consistent with the statutory definition of "employment relations" and with ERB's prior interpretation of that term, and whether ERB's decision is based on substantial evidence. ORS 183.482(8)(a) and (c).[2] We affirm the Court of Appeals.

---

[1] ORS 243.672(1) in pertinent part provides:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(e) Refuse to bargain collectively in good faith with the [labor organization that has the right to be the collective bargaining agent of all employes in the appropriate bargaining unit]."

ORS 243.650(4) provides:

" 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employes to meet at reasonable times and confer in good faith *with respect to employment relations* * * *. However, this obligation does not compel either party to agree to a proposal or require the *making of a concession."* (Emphasis added.)

ORS 243.650(7) provides:

"(7) 'Employment relations' *includes, but is not limited to, matters concerning* direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment." (Emphasis added.)

[2] ORS 183.482(8) provides:

"(a) The court may affirm, reverse or remand the order [in its review of a contested case]. If the court finds that the agency has erroneously interpreted a

## FACTS

In the summer of 1985, City's council adopted a goal: to develop a reserve police officer program. In June of 1986, City sent SPEU a letter promising "the opportunity to bargain over portions of the program, if necessary." In August, the council adopted a reserve police officer program. The Chief of Police unilaterally implemented the program. The demand for an opportunity to bargain, the refusal to bargain, and the unfair practices complaint followed.

In March 1987, ERB ordered City to "cease and desist from refusing to bargain in good faith with the SPEU concerning the decision to adopt a reserve officer program" and to "not deploy reserve officers until it has exhausted [its] duty to bargain." ERB found that the reserves, although unpaid, would wear uniforms, badges, and guns, would go on patrol and make arrests and issue citations. It found they would do the same work as paid police officers.[3] One of ERB's conclusions of law was that City's refusal to bargain was an unfair labor practice under ORS 243.672(1)(e) because the adopted program was the "equivalent of a transfer of bargaining unit work through subcontracting or other means." The

provision of law and that a correct interpretation compels a particular action, it shall:

"(A)  Set aside or modify the order; or

"(B)  Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b)  The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A)  Outside the range of discretion delegated to the agency by law;

"(B)  Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C)  Otherwise in violation of a constitutional or statutory provision.

"(c)  The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

[3] One finding of fact in ERB's order stated:

"6.  The City originally had a reserve program in 1975. This program had a training program similar to the present reserve program but the reserves acted in a solo capacity. The program was discontinued in 1983 because the reserves could not maintain the professional abilities of the full-time officers and the prior chief did not want to be placed in a position with the City Council where the council would substitute reserves in the place of sworn officers in the budget."

program would thus take potential work and earnings away from patrol officers in SPEU by giving the work to reserves who are not in SPEU. ERB concluded that the program, as such, was within the definition of "employment relations," which made bargaining mandatory. ERB found that the proposal's potential effects on regular officers' working conditions, including monetary losses to members of the patrol officers' bargaining unit, would be significant and pervasive.[4]

The general issue raised by City's appeal is whether ERB correctly interpreted the term "employment relations" as applicable to future potential impacts of the reserve officer program on the working conditions of the regular officers who are members of SPEU. City contends that, because there are no immediate losses to any individual officer and the Chief of Police has given assurance that paid officers will suffer no economic loss, its police officers must wait to bargain until they are harmed.

## STATUTORY ANALYSIS

The term "employment relations" is to be interpreted by ERB in light of the policies and purposes stated in the

---

[4] ERB's findings of fact 17, 18 and 20 support the proposition that regular officers' safety could be immediately jeopardized by use of reserves. In a conclusion of law, in a footnote, ERB held that the subject of "employment safety is mandatory for bargaining." ERB stated:

"There may be some immediate safety implications of the deployment of reserve officers, however (Finding of Fact No. 20). Employment safety, as a subject, is mandatory for bargaining. *IAFF Local 314 v. City of Salem,* Case No. C-61-83, 7 PECBR 5819 (1983), *aff'd* 68 Or App 793 (1984), *rev den* 298 Or 150 (1984)."

Testimony supporting ERB's findings and conclusion was that City's police officers anticipated possible threats to their personal safety while patrolling with reserves because:

— Inexperienced personnel are more prone to take precipitous and extreme action, including use of firearms, in a crisis.

— Reserves do not work daily or repeatedly with the same regular officers so that experienced teamwork is not developed. Both safety and efficiency are enhanced by teamwork.

City does not assign any error to the substance or procedural sufficiency of ERB's conclusion that employment safety is a subject upon which employer and employee must negotiate in good faith. We take that question as settled, but that does not conclude this case because other aspects of the reserve program are included in ERB's order that the City provide SPEU the opportunity to bargain before implementing the program or deploying the reserves on patrol. City assigns error to other aspects of ERB's order.

Public Employes' Collective Bargaining Act (PECBA). That act establishes the right of public employees to "collective bargaining with their public employer on matters concerning employment relations" and defines the scope of "employment relations."

When first enacted, PECBA stated its purpose was to "promote the improvement of the relationship between public employers and their employes." Or Laws 1963, ch 579, § 1. Strikes were prohibited. *Id.* § 6. ERB was not yet established. A state conciliation service was available to mediate disputes, but it had no affirmative powers. *Id.* § 5.

In enacting Oregon Laws 1969, chapter 671, the legislature retained the original statement of purpose, but replaced the former definition of "employment relations" as follows:

> " 'Employment relations' includes, but is not limited to, matters concerning [wages, salaries] *direct or indirect monetary benefits*, hours, vacations, sick leave, [holiday pay], grievance procedures *and other conditions of employment*." Or Laws 1969, ch 671, § 2(2). (The additional phrases enacted are emphasized; those deleted are bracketed.)

These amendments substituted the broader words "direct or indirect monetary benefits" for more specific words describing pay for work and added the phrase "other conditions of employment." The legislature obviously intended this addition and substitution to expand the scope of "employment relations" as used in the public employer-employee bargaining context. To further broaden the collective bargaining law, the 1969 revision established a mutual obligation to bargain and created the Public Employe Relations Board to facilitate the process but limited its authority to mediation, findings of fact, and recommendations. *See id.* §§ 2(1), 4(2), 6-7. The legislature required management and labor to provide the opportunity for meaningful good faith negotiations about matters within the definition of employment relations.

By Oregon Laws 1973, chapter 536, the legislature retained the definition of "employment relations" and the original statement of purpose to promote the improvement of employer-employee relations but added a number of policy purposes, which included calling for the "peaceful adjustment of disputes," and a statement of legislative purpose to require negotiations to "resolve grievances and disputes." Or Laws

1973, ch 536, § 2. The 1973 amendments also extended ERB's authority. They established a hearing procedure for complaints and an enforcement mechanism to govern unfair labor practices by issuing cease and desist orders. *Id.* § § 4-5. The 1973 act gave most public employees, but not police, fire, or corrections security personnel, the right to strike. *Id.* 17.

A statute concerning an agency is interpreted in the context of the purposes that the legislature sought to achieve through the specific agency and statute involved. Interpretation is specific to that agency and those purposes.[5] In construing "inexact" statutory terms, where legislative history does not show expressly whether a given situation was considered and intended to be excluded or included within the terms of a statute, "* * * the test is general: whether a particular interpretation or application is consistent with or tends to advance a more generally expressed legislative policy." *Springfield Education Assn. v. School Dist.,* 290 Or 217, 226, 621 P2d 547 (1980). "The dispositive question of law * * * is whether the agency action is within the legislative policy which inheres in the statutory term." 290 Or at 227.

We have previously considered the meaning of "employment relations" in ORS 243.650(7). In *Springfield Education Assn.,* the court stated:

"[T]he legislature chose to define 'employment relations' by example, but did not use an exhaustive list of examples. Rather, it used a general term, 'other conditions of employment,' intended to allow ERB to include other subjects of like character. * * * [T]he statutory terms 'employment relations' and 'conditions of employment' were intended to charge ERB

---

[5] The proposition that statutory construction questions are best determined by reference to each specific statute, rather than by trotting out abstract rules of construction and applying them broadcast, is found in a number of our cases. In *McPherson v. Employment Division,* 285 Or 541, 550, 591 P2d 1381 (1979), this court stated that " 'good cause' in its own terms calls for completing a value judgment that the legislature itself has * * * indicated [but not completed]." In *Megdal v. Board of Dental Examiners,* 288 Or 293, 311, 605 P2d 273 (1980), this court noted, "The statute does not expressly state that the expanded grounds for disciplinary action under the rubric 'unprofessional conduct' were to be created by board rules. But there are reasons to believe that this is the legislative policy." In *Trebesch v. Employment Division,* 300 Or 264, 272, 710 P2d 136 (1985), this court determined that "[t]he question when an individual pursues employment with 'a systematic and sustained effort' is one of interpretation, not policymaking." *Anaconda Company v. Dept. of Rev.,* 278 Or 723, 727, 565 P2d 1084 (1977), instructively states: "Statutes are not fungible, and their interpretation is not a form of common law."

with interpretive rather than legislative responsibility." *Id.* at 233.

More recently, in *Portland Fire Fighters Assoc. v. City of Portland,* 305 Or 275, 285, 751 P2d 770 (1988), this court recited the statements of policy and purpose in ORS 243.656 and, in an analysis extending that in *Springfield Education Assn.,* construed the meaning of "employment relations" in light of those statements. This court reasoned:

> "[T]he Legislative Assembly's purpose in enacting collective bargaining legislation for public employers and employees * * * is to channel labor disputes into negotiation and mediation and thereby avoid the impairment and interruption of public services caused by strikes, lockouts and other forms of economic warfare. If negotiation and mediation are to be effective means of resolving labor disputes, the scope of the definition of those matters subject to mandatory negotiation and mediation must be broad enough to encompass all matters over which labor disputes are likely to arise." 305 Or at 283. (Footnote omitted.)

In *Portland Fire Fighters Assoc.,* ERB held that the City of Portland need not negotiate over the city's imposition of substantial limitations on individual firefighters' freedom to schedule vacations. The Court of Appeals affirmed ERB's characterization of the vacation limit as a "staffing proposal." But this court rejected ERB's interpretation of the employment relations statute, after casting aside the use of the label — "staffing proposal" — as having no analytic validity. *Id.* at 285 n 7. This court held that a vacation limitation is a " 'matter concerning * * * vacations' [and is mandatorily bargainable.]" * * * *Id.* at 285. We held that "the ERB erred in [*i.e.,* by] applying its 'balancing test' to a proposal concerning a matter enumerated in ORS 243.650(7)." *Id.* at 285.

The statute does not mention "mandatory" or "permissive" subjects. The dichotomy between mandatory and permissive subjects was developed by reading together the majority opinion and the dissent in *Labor Board v. Borg-Warner Corp.,* 356 US 342, 78 S Ct 718, 2 L Ed 2d 823 (1958). This mandatory-permissive dichotomy has been criticized. *See,* Note, *Major Operational Decisions and Free Collective Bargaining: Eliminating the Mandatory/Permissive Distinction,* 102 Harv L Rev 1971 (1989). Neither Congress nor the

Oregon legislature expressly incorporate the dichotomy in their respective statutes.

■ Under Oregon statutes a public employer and represented public employees must bargain about subjects within the definition of "employment relations." While the law does not prohibit bargaining about any other subject as well, the rights and duties extend only so far as does the statutory definition. ERB's enforcement and interpretative duties are likewise coextensive with the statute.

## CLAIMED ERRORS

The parties have focused on technical concepts, rather than upon the words of the statute, in the litigation of this case before ERB and the Court of Appeals. City's brief quotes the definition of employment relations at the outset but does not refer to it again to support any assignment of error. SPEU's brief is also cast in the terminology used by ERB. The parties contend over whether the facts support ERB's findings that the program was "subcontracting" and was not "de minimis" or a "staffing proposal" and whether ERB properly performed or applied its own "all things considered" and "balancing" tests to determine whether the reserve program was purely a "management prerogative" and thus not bargainable.

However, ERB's findings and conclusions both relate to the terms of the statute defining mandatorily bargainable subjects and to the concepts and analogies employed by it to analyze the facts.

Parties sometimes claim that appellate courts have decided their case upon the basis of issues which neither party tendered to the court. We trust, however, that in this case our duty to decide the case based on the words of the legislative act, rather than specialized nomenclature, will be recognized and understood. Justice Holmes, it is said, once commented:

"Sometimes the understanding of the obvious is more important than the understanding of the obscure, especially when the obvious counts."

City finds error within three general classifications: ERB should not have interpreted the statute to cover a possible future monetary loss; ERB did not follow its own decided

case when it employed the subcontracting analogy; and substantial evidence in the record does not support the finding that any significant future monetary loss will flow from the reserve program. These assignments raise issues under ORS 183.482(8)(a) and (c).

## A. *Subcontracting*

City argues that ERB erroneously applied its subcontracting analogy to City's innovative reserve program because ERB, in applying the subcontracting concept, was required to follow its previous decision in *Federation of Oregon Parole and Probation Officers v. Corrections Division,* (FOPPO) Case No. C-57-82, 7 PECBR 5649, 7 PECBR 5664 (1983), and that ERB was departing from a previously announced decision without explaining why it was not following that precedent.

■ After informing itself by the approach to subcontracting issues taken by the National Labor Relations Board,[6] ERB held, and the Court of Appeals affirmed, that City's reserve program fits into the subcontracting concept. In *FOPPO,* during regular contract negotiations, the issue of trips to bring back parole violators who were located out of state was indirectly broached but not settled. After the contract was signed and delivered, the Corrections Division contracted out the trip function, which parole officers had primarily, but not exclusively, performed, to persons who were not members of the parole officers' bargaining unit. ERB found that contracting out caused no significant adverse impact on "employment relations" and concluded that a

---

[6] ERB stated:

"In *Westinghouse Electric Corp.,* 150 NLRB 1574, 58 LRRM 1257 (1965), the [National Labor Relations] Board indicated that an employer must bargain about a decision to subcontract if *any* of the following conditions are present: (1) The subcontracting plan involves a departure from previously established operating policies, (2) it changes conditions of employment for bargaining unit members, or (3) it results in significant impairment of job tenure, employment security, or reasonably anticipated work opportunities for bargaining unit employes. On the other hand, the Board stated that bargaining is not required where *all* of the following tests are met: (1) The contracting out plan is motivated solely by economic considerations, (2) it comports with traditional methods by which the employer conducts business, (3) it does not vary significantly from previous subcontracting, (4) it has no adverse impact on employes in the bargaining unit, and (5) the union has an opportunity to bargain about changes in subcontracting practices during normal negotiations sessions."

renewed opportunity to bargain prior to implementation was not required.[7]

ERB's finding was based on substantial evidence that: (1) no overtime was lost and no increase in monetary compensation could result to the parole officers, even if they continued to go on parolee recovery trips, because of the flex-time/exchange-time provisions in the parole officer's contract, (2) the work was occasional (an average per officer of about one trip every two years) and was not similar to day-to-day bargaining-unit work.

In its order in this case ERB points out that the operative facts of *FOPPO* and this case are different. However, in any event, ERB's reasoning in *FOPPO* indicates that a future or potential impact is sufficient to trigger the statute requiring bargaining, consistent with its decision in the present case. For example, *FOPPO* states:

"[W]e cannot find at least a potential for significant impact on unit work conditions. The loss of one employe's job may be enough, or the loss of 'extra duty' and the extra salary that goes with it." 7 PECBR at 5658. (Footnotes omitted.)

Earlier in the order, the ERB stated:

"If no such impact is found (immediate or potential) the inquiry ends and the [unfair practice] complaint fails." *Id.* at 5657-65. (Parenthesis in original.)

In denying a requested reconsideration, ERB summarized its ruling as follows:

"Furthermore, there is no convincing evidence in the record (nor do we believe it necessarily follows) that the relocation of the prisoner transport work would significantly increase the probability of future layoffs or constitute the first step in a slow erosion of unit work. Significantly, the transport work is only remotely related to the primary parole officer function and would seem to require none of the knowledge and skills employed by unit members day-to-day." *Id.* at 5664-65. (Parenthesis in original.)

---

[7] An employer may not unilaterally make a change in one of the conditions of employment about which the employer is required to negotiate and bargain in good faith with the workers or their representative. *See Labor Board v. Katz,* 369 US 736, 82 S Ct 1107, 8 L Ed 2d 230 (1962).

ERB is clear that the controlling question in determining if state law requires advance negotiation in good faith is whether the action or decision affects "employment relations."

"[W]hen the subject matter of the management decision itself falls within the definition of 'employment relations' * * * [n]o 'impact test' is necessary because the legislature in ORS 243.650(7) has said the subject matter of the decision must be bargained. The impact on employment relations of the decision necessarily follows and is simultaneous with the decision itself." *Id.* at 5654. (Footnote omitted.)

ERB pointed out that labeling a management action "subcontracting" does not provide a solution to the problem created by that action.

"[T]he duty to bargain a subcontracting decision cannot be judged apart from its impact.

"* * * * *

"Where subcontracting has only a slight or remote impact on the bargaining unit, the employer need not bargain the change." *Id.* at 5655-56. (Footnote omitted.)

In the present case, ERB's analysis, using the monetary benefits fact distinction, related the meaning of the statute, enumerating "matters concerning direct or indirect monetary benefits" as mandatorily bargainable, to City's proposal which could shift the unit's regular patrol work to unpaid volunteers. The issue is not whether this court could express the interpretation and application more precisely but rather whether ERB's interpretation and application are erroneous. *See* ORS 183.482(8)(a). ERB is not in error.

ERB's task is to interpret the meaning of "employment relations" and apply that meaning to the specific public bargaining dispute brought before it to the end that such disputes be resolved peacefully. ERB is then to ensure that the disputants follow their statutorily stated responsibilities.

B.  *Potential Future Impact*

*Amici* and the City argue that a potential future impact does not qualify as "subcontracting."

City argues that ERB erred as a matter of law by failing to weigh the uncertain future impact on the bargaining

unit against the City's right to manage, *i.e.*, that ERB erred by not performing and applying ERB's "balancing test" in this case. This argument overlooks the holding in *Portland Fire Fighters Assoc.*, that "the ERB erred in applying its 'balancing test' to a proposal concerning a matter enumerated in ORS 243.650(7)." 305 Or at 285. City expands this claim of error—that future impacts are not bargainable—by arguing that there is no substantial evidence to support a holding because a future impact has not yet occurred. As this argument runs, there can never be substantial evidence in the record to support an ERB decision if the subject of dispute concerns potential future impact on the statutorily defined interest of the workers.

ERB found that the "[p]rogram was established through a policy which is subject to unilateral change by Chief [of Police] Riley." A stroke of the Chief's pen can change a future impact to an immediate one. Selection and training of twenty reserves was underway when SPEU complained to ERB. City says SPEU has no right to close the barn door until the horse is gone and argues that the Chief's promises that he will not take the patrol officer's overtime horse out of their fiscal barn is a complete answer to the request to negotiate. Besides, City contends, there is no substantial evidence that "matters concerning * * * monetary benefits" are involved because the Chief promises that there will be no economic impact. The patrol officers respond that the present Chief could leave, or his superiors could overrule his current policy. They seek to get the Chief's promises in writing.

Workers' rights depend upon provisions of their contract. They frequently have no other basis upon which to rely. That no provisions of the present contract protect bargaining unit work highlights why the employees requested the opportunity to bargain on the subject to attempt to obtain protection by contract. Even if the statutes contained temporal limitations on bargainable subjects, which they do not, the statutory policy of fostering "peaceful adjustment of disputes" will be served by discussing a problem as soon as it is perceived. Waiting until economic or other loss occurs increases tension and risks strife. Labor contract negotiations by nature build on past and present conditions to reach the parties'

concerns for the future. Since City's argument that an uncertain potential impact on workers is not a subject for negotiation is not supported by the words of the statute or by an analysis that seeks peaceful adjustment of disputes, it fails. City was selecting and training the reserve officers when the regular officers requested bargaining. When otherwise within the context of ORS 243.650(7), potential impacts are bargainable.

■     Once a subject is established as bargainable, details of that subject also become bargainable. This court held in *Springfield Education Assn.* that procedural fairness in evaluations was bargainable under the "other conditions of employment" category in ORS 243.650(7). 290 Or at 239. The right to bargain for a fair evaluation procedure included bargaining to insure *clarity of definition* of evaluation criteria. This court explained that, because an evaluation affected job security, promotion, and grievance procedures, it had characteristics similar to the listed examples of employment relations subjects in ORS 243.650(7). *Id.* at 234. Clear definition of criteria will enhance the fairness of evaluations.

Evidence presented to ERB demonstrates why the police officers demand to bargain about the transfer of bargaining-unit work. Testimony showed that the work transfer could affect monetary benefits of the bargaining unit in the following particulars:

—  Decreases in pay, especially through loss of overtime.

—  Added work in the form of supervisory responsibilities without promotion or added pay.

—  Reduction in the amount of back-up work available for bargaining unit members will cause loss of regular or overtime pay.

—  Layoffs of unit members will increase because reserves are available to fill in during times of budget shortfalls. In a prior experiment with unpaid reserve officers, City assigned them to solo patrol performing tasks identical to the work done by paid members of the bargaining unit. City has no binding descriptions or guidelines of what work reserves will be assigned to do or what level of ability will be required in performance of that work.

These are "matters concerning direct or indirect monetary benefits."

### C.  *Substantial Evidence*

We find substantial evidence on the whole record before ERB supports its decision. The only contrary evidence was the police chief's assertion that he had no current intention of administering the program in a way which would cause economic loss.

City, in its petition for review, contends the Court of Appeals erred because that court did not "review ERB's order to determine if the agency acted contrary to legislative delegation in the formulation of interpretive criteria." No legislative delegation is made to ERB in the term "employment relations." *Springfield Education Assn. v. School Dist., supra,* 290 Or at 233. *Portland Fire Fighters Assoc. v. City of Portland, supra,* 305 Or at 284-85, followed the *Springfield* holding that, where matters enumerated in the definition of "employment relations" in ORS 243.650(7) are concerned, ERB has only interpretive functions; no legislative delegation is made.

The employer's refusal to bargain in good faith is an unfair labor practice. The Court of Appeals' decision is affirmed. The decision of the Employment Relations Board is affirmed.