# IN THE OREGON TAX COURT

## McCORMICK
*v.*
## DEPARTMENT OF REVENUE
(TC 2518)

Richard E. AuFranc, Salem, and Scott McArthur, Monmouth, represented plaintiff.

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, represented defendant.

Decision for plaintiff rendered February 27, 1987.

## JOHN S. HORTON, Judge Pro Tem.

The plaintiff has appealed that portion of defendant's order No. 84-6635 dated August, 1986, that held plaintiff personally liable for unpaid withholding taxes, penalties and interest for the first, second and third quarters of 1983 for employes of McCormick-Shires Lumber, Inc., and its wholly owned subsidiary, McCormick-Shires Millwork, Inc. The plaintiff has not appealed that portion of the order that held him not personally liable for the third and fourth quarters of 1982.

The basic issues are whether plaintiff, under the evidence, was an "employer" within the meaning of ORS 316.162(3)(b) or a "surety" within the meaning of ORS 316.167(3) during the time period involved.

The material portions of the pertinent statutes are:

ORS 316.162(3) which provides:

"(3)   'Employer' means:

"* * * * *

"(b)   An officer or employe of a corporation * * * under a duty to perform the acts required of employers by ORS 316.167, 316.182, 316.197, 316.202 and 316.207."

ORS 316.167(1) which provides:

"(1)   Every employer at the time of payment of wages to an employee shall deduct and retain from such wages an amount determined * * *."

ORS 316.197(1)(a) which provides:

"(1)(a)   * * * the employer shall pay over to the department * * * the amounts required to be withheld under ORS 316.167 * * *."

and

ORS 316.167(3) which provides:

"(3)   If a lender, surety or other person who supplies funds to or for the account of an employer for the purpose of paying wages of the employes of such employer has actual notice or knowledge that such employer does not intend or will not be able to make timely payment or deposit the tax required to be deducted and withheld, such lender, surety or other person shall be liable to the State of Oregon in a sum

equal to the taxes together with interest which are not timely paid over to the department."

It is necessary to determine the material facts. McCormick-Shires Millwork, Inc., and McCormick-Shires Lumber, Inc., are the corporations that failed to pay employe withholding taxes for the last two quarters of 1982 and the first three quarters of 1983. Since most records of the corporations were jointly kept, they are hereafter referred to in the singular. The millwork corporation was formed in 1975 as a subsidiary of a lumber and millwork company founded by plaintiff in 1965, which became McCormick-Shires Lumber, Inc., in 1977. The plaintiff was principal owner and officer of both corporations until 1979 when he divested himself of all control under a retirement program. The retirement program was modified on September 27, 1982, when the corporation required increased financing and plaintiff increased his guarantee on the Oregon Bank's line of credit to the corporation and was to acquire proxy on two percent of the corporate stock and assume position as chairman of the board. Prior to and after that date, one Shires held 51 percent and one Lea held 49 percent of the outstanding stock of the corporation; Shires was its president and general manager; Lea was its secretary; both constituted its board of directors and both were the only persons authorized to sign its checks. The Oregon Bank had a security interest for its line of credit in the corporation's inventory and accounts receivable, right of set-off on the corporation's only bank account, plaintiff's irrevocable guarantee on $200,000 on the bank's $450,000 credit line and plaintiff's subordination agreement on corporate and personal indebtedness due him. The corporation, Shires and Lea were obligated to plaintiff on a series of contracts constituting the modified retirement agreement and were current on their obligations. On April 19, 1983, the bylaws of the corporation were amended at a stockholders' meeting and Shires, Lea, one Murphy and plaintiff were elected to the board. At the directors' meeting immediately following, Shires was elected president, Lea was elected vice president and secretary, Murphy was elected assistant secretary and plaintiff was elected chairman of the board. Section 6 of the bylaws empowered the chairman of the board to "preside at all meetings of the board of directors, and exercise and perform such other powers and duties as may be from time to time assigned to him by the board of

directors or prescribed by the By-laws." The board appointed Lea the new general manager. Shires and Lea, since June 11, 1981, as president and secretary, were the only officers or employees of the corporation authorized to sign checks or drafts on the sole account of the corporation with Oregon Bank. This authority was not changed until plaintiff was authorized as the only signer on September 28, 1983.

After plaintiff increased his personal guarantee to the bank on the corporate line of credit in September of 1982, he took a more active interest in the affairs of the corporation and in an advisory capacity, commencing in early 1983, he visited the corporate premises more frequently. He helped the bookkeeper prepare monthly financial statements for the bank. He rewrote some job descriptions. He even signed two corporate checks, one in January and another in March to pay some urgent bills, both of which checks the bank required to be ratified by an authorized officer of the corporation. The plaintiff also helped collect some slow accounts by calling the corporate debtors from time to time. Plaintiff was aware the withholding taxes had not been paid in early 1983. Plaintiff felt that a change in management was necessary and therefore enforced, under threat of withdrawing his bank guarantee (which was in fact irrevocable) or future guarantees, his letter understanding when he increased his guarantee in September of 1982, by the changes in the bylaws, assuming chairmanship of the board, and changing the general manager of the corporation on April 19, 1983. The plaintiff consulted with the corporate officers on payment of some of the corporate bills, but this was irregular. The plaintiff was out of the state for 20 days in June, eight days in July, and 15 days in August of 1983. On August 31, 1983, plaintiff notified the corporation and officers that payments under his various retirement contracts were past due and that if not brought current, he would be forced to invoke his contractual remedies. In September of 1983, the corporation paid rent and deferred income due plaintiff but no other defaulted obligations, and continued to pay other corporate obligations, including a total of $18,500 to a corporation owned by Shires and Lea and their respective wives. The Oregon Bank, during September, having reviewed its security, decided to call its loan and notified all parties. The plaintiff, at this juncture, exercised all of his default rights under his retirement contracts, ousted the corporate

officers by locking them out, and took sole control of the corporation on September 28, 1983. The plaintiff acquired, according to the corporation balance sheet as of September 30, 1983, among other corporate assets, $20,307 petty cash, no cash in bank checking and $4,155 in bank savings accounts as against $37,114 state withholding tax liabilities. The balance sheet is in apparent error, for a certified bank statement on the savings account shows withdrawal of the $4,152.55 on August 10, 1983, and a zero balance on September 30, 1983. The bank statement on the corporate checking account shows an ending balance on September 30, 1983, of $15,022.43 and a $19,000 bank loan deposit to the corporation on the same date. A reconciliation attached to the statement shows $9,391.96 of outstanding checks against the balance, thus a check balance of $5,630.47 as of September 30, 1983. Thereafter, the bank allowed plaintiff to wind down the corporate business in October by advancing further loan funds to enable plaintiff to complete some work in progress, collect some corporate accounts and to pay some current liabilities but no prior management debts. The plaintiff did not request or direct nor did the bank authorize or direct the payment of the delinquent Oregon corporate withholding taxes during the corporate delinquency period. Some current taxes were paid through the end of October when the corporation folded.

■     (1)   The plaintiff argues that during the entire period after he retired and after he took over the corporation on September 28, 1983, he was not an "employer" within the definition of ORS 316.162(3). This Tax Court, in a first Oregon ruling on a similar question in *Briggs v. Commission,* 2 OTR 162 (1965), held that when the president of a corporation exercised no supervision or control over the day-to-day operations of a lumber mill, was out of the state almost all of the time during the mill operation, and where the management was under the active control of a third party, the mere fact that he was president was not sufficient to charge him with personal liability for the taxes under ORS 316.162.

Both plaintiff and defendant rely upon the guidelines set forth in *White v. United States,* 372 F2d 513 (Ct Cl, 1967), which established, in reaching a determination with respect to persons upon whom to impose liability for failure to pay corporate income and FICA taxes, a definition of a "responsible

person" as one who has the final word as to what bills or creditors should or should not be paid and when.

In *Frutiger v. Department of Revenue,* 270 Or 821, 529 P2d 910 (1974), our Oregon Supreme Court held that where a creditor of a corporation assumed some control over payment of the bills of the corporation and where husband, as sole stockholder, president and director of the corporation continued to have legal and actual responsibility for direction and control of the corporation, the wife of the sole owner was not an "employer" although she was an officer and director, owned no stock, received no compensation, and exercised no day-to-day supervision or control.

The defendant adopted OAR 150-316.162(3) effective December 31, 1985, after the time period involved in this case, but before its decision here appealed. This rule enumerates various corporate duties that place an individual within an "employer" status under the statute.

As recently as *Olson v. Dept. of Rev.,* 10 OTR 272 (1986), this court held that a stockholder, director and officer of a corporation, although having an apparent "duty" under the statute to withhold, did not in fact exercise or expect to exercise control over the management of the corporation and consequently was not liable for the payment of the delinquent tax as an "employer" within the meaning of ORS 316.162.

The gist of the court decisions, the Department of Revenue decisions and the above rules is that in order to be classified as an "employer" within the statute and thus be liable for payment of taxes, the individual must have the requisite authority and control in form and substance within the corporate structure to order the payment of or pay the corporate tax.

This court finds that under the facts in the case at bar, the plaintiff, even as chairman of the board after April 19, 1983, had no real authority or control within the corporation to pay or order paid delinquent taxes. Such corporate authority and control did not exist in the plaintiff until September 28, 1983, when the plaintiff, under his retirement contracts, exercised his contractual default rights against the corporation, its stockholders, officers and management, and took actual control of the corporation. He could not declare a default under his contracts on the basis that the corporation

did not pay the withholding taxes. His two percent proxy vote as a stockholder or his position as chairman of the board did not give him the requisite power or authority within the corporation to pay or order paid the tax. The persons in actual control of the corporation had to be ousted by plaintiff as above noted for the plaintiff to gain control.

■ (2) The defendant has asserted that plaintiff was liable for the taxes under ORS 316.167(3) as a "lender, surety or other person who supplies funds to or for the account of an employer." The plaintiff was a guarantor of loans made by the bank to the corporation. A guarantor's liability is secondary and collateral, and its enforcement depends upon certain conditions. A surety's liability is original, primary and direct. *See Howell v. Commissioner,* 69 F2d 447, 450 (8th Cir, 1934). The plaintiff is not within the statute.

(3) The defendant also asserted that there were sufficient assets in the corporation to pay the taxes when the plaintiff took control on September 28, 1983. The evidence indicates that all of the corporate assets were under the control of the lending bank and that the actions of plaintiff in winding down the corporation were subject to the bank's direction which prohibited payment of prior management obligations on pain of complete closure and liquidation of the corporation. This case is distinguishable from *Frutiger v. Department of Revenue, supra,* where the lender did not place restrictions on payment of delinquent obligations and left management to the corporate president.

The evidence preponderates in favor of the plaintiff to the effect that he at no time had any power, authority or control within or without the corporate structure to order or pay the corporate delinquent withholding taxes and cannot be charged with the "duty" to perform the acts of an "employer" within the meaning of ORS 316.162 or of a "lender, surety or other person who supplies funds" within the meaning of ORS 316.167(3).

The assessments against plaintiff for unpaid withholding taxes, penalties and interest of McCormick-Shires Lumber, Inc., and McCormick-Shires Millwork, Inc., are abated and that portion of defendant's order No. 84-6635 appealed from is set aside. Plaintiff shall recover his costs and reasonable attorney's fees.