Argued and submitted April 29, judgment of the Tax Court affirmed July 31, reconsideration denied September 23, 1997

Neil H. ROBBLEE,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent,*

*and*

George MAITLAND
and Peter Morkill,
*Defendants.*

(OTC 3700)

George B. MAITLAND,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent,*

*and*

Neil H. ROBBLEE
and Gary Garman,
*Defendants.*

(OTC 3701)

Gary L. GARMAN,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

(OTC 3702; SC S43471)

942 P2d 765

Neil H. Robblee, Seattle, Washington, appellant, argued the cause and filed briefs *in propria persona*.

John Eric Wilkes, Salem, argued the cause and filed the briefs for appellant George B. Maitland.

James C. Wallace, Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were Theodore R. Kulongoski, former Attorney General, and Hardy Myers, Attorney General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Durham, and Graber, Justices.**

GRABER, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

**GRABER, J.**

In these consolidated tax cases, two corporate officers appeal from a judgment of the Tax Court holding them personally liable for unpaid withholding taxes of Harris of Pendleton, Inc. (HOPI), an Oregon corporation. *Robblee v. Dept. of Rev.*, 13 OTR 505, 514 (1996). We review *de novo*, ORS 305.445; 19.125(3), and affirm.

## FINDINGS OF FACT

In late 1988, four individuals agreed to buy the assets and inventory of the furniture division of Harris Pine Mills, Inc. (Harris), a large manufacturing concern then in bankruptcy. The four were George Maitland and Peter Morkill (furniture manufacturers), Neil Robblee (a lawyer), and Cary Garman (a certified public accountant). For that purpose they organized a new Oregon corporation, HOPI.

Robblee served as the chief executive officer of HOPI, as well as chair of the board of directors. He had a 51 percent ownership interest in HOPI. Robblee's wife, who had no separate ownership interest, became the corporate secretary. Maitland had a 35.6 percent ownership interest in the corporation and was its president. Garman, who had a 5 percent ownership interest in HOPI, acted as chief financial officer; and Morkill, who owned the remaining 8.4 percent, was named vice-president.

HOPI purchased the assets and inventory of Harris for about $8 million. HOPI needed to borrow most of the purchase price.[1] The principals arranged for financing through Congress Financial Corporation (CFC). CFC loaned HOPI $1.5 million to buy equipment and extended a line of credit of up to $3.5 million based on, and secured by, HOPI's accounts receivable and inventory. A note and second mortgage taken back by the owner of Harris provided the balance of the purchase price.

Despite the efforts of the principals, HOPI did not prosper. As a result, Robblee signed a loan modification

---

[1] Robblee contributed $50,000 in cash and a $200,000 letter of credit. Garman contributed $50,000 in cash. Maitland and Morkill contributed a furniture business, valued at $300,000, which they owned.

agreement with CFC on September 1, 1989. That agreement provided that the maximum credit available against HOPI's inventory would be reduced by $300,000.

At about the same time, the principals began to anticipate problems in paying HOPI's payroll taxes. On September 26, 1989, Maitland asked Robblee and Garman to have his name removed from the signature cards at the bank where HOPI maintained its corporate account.

In early October of 1989, HOPI began to exceed its credit limits. CFC, which was becoming increasingly concerned about HOPI's financial situation, started to review HOPI's expenditures daily. Also, by agreement, HOPI arranged for CFC to receive all revenue from HOPI's operations and to make loan advances only for approved expenses.

On October 9, 1989, HOPI made its last Oregon withholding tax payment before its bankruptcy in December 1989. In November 1989, HOPI missed its federal and state withholding tax payments.

HOPI sought additional credit from CFC. By December 1, 1989, Robblee, Maitland, and Garman concluded that CFC would not increase their credit limit. For that reason they decided to stop cooperating with CFC. Garman continued to apply for loan advances to pay vendors approved by CFC, but instead used the money to pay federal withholding taxes. The officers made four payments on HOPI's federal withholding tax obligation before CFC stopped all loan advances.

At around the same time, Robblee and Garman began to place money in HOPI's vault, rather than depositing it in CFC's bank account pursuant to the loan agreement. When it learned of those actions, CFC obtained a temporary restraining order prohibiting HOPI from withholding the money. On December 18, 1989, HOPI filed a petition in bankruptcy.

On January 31, 1990, HOPI filed its fourth quarter 1989 state withholding tax return. During that fourth quarter, HOPI had paid less than the full amount of taxes shown as due on the return. The amount reported as due but unpaid was $36,083.20.

Following an investigation, on November 12, 1991, the Department of Revenue (department) sent notices to Robblee and to Garman asserting that the department deemed them to be personally liable for taxes, penalties, and interest relating to the first, third, and fourth quarters of 1989 and the second quarter of 1990. The documents also notified Robblee and Garman of their appeal rights. In part, those documents stated:

"HARRIS OF PENDLETON INC HAS UNPAID WITH-HOLDING TAX LIABILITIES FOR THE FOLLOWING PERIODS,

"[PERIODS AND AMOUNTS LISTED]

"* * * * *

"THE CORPORATION HAS FAILED TO PAY THE WITHHOLDING TAX LIABILITIES. UNDER ORS 316.162 AND ORS 316.167, RESPONSIBLE OFFICERS AND EMPLOYEES OF A CORPORATION ARE PERSON-ALLY LIABLE FOR ANY TAXES DUE AND NOT PAID TO THE DEPARTMENT. YOU ARE DETERMINED TO BE A RESPONSIBLE OFFICER FOR THE PERIODS IN QUESTION.

"* * * * *

"IF YOU DO NOT AGREE WITH THE DETERMINA-TION AND ASSESSMENT AND WISH TO APPEAL IT, YOU MUST DO SO IN WRITING *WITHIN 90 DAYS* FROM THE DATE OF THIS NOTICE. IF YOU DO NOT DO THIS, THE ASSESSMENT BECOMES FINAL AND YOU LOSE YOUR APPEAL RIGHTS. YOU MAY APPEAL IN WRITING TO THE DIRECTOR OF THE OREGON DEPARTMENT OF REVENUE, REQUESTING A CON-FERENCE OR HEARING." (Capitalization and emphasis in original.)

Also on November 12, 1991, the department sent notices to Maitland and to Robblee's wife stating that a proposed assessment of withholding tax liability had been made against them.

Robblee, Maitland, Garman, and Robblee's wife all appealed their assessments and proposed assessments. On April 15, 1992, the department held a conference with those four individuals to determine whether they were personally

liable for the unpaid withholding taxes. As a result of the conference, the department dismissed the assessments and proposed assessments for all quarters except the fourth quarter of 1989. With respect to the fourth quarter of 1989, the department determined that Robblee, Maitland, and Garman were personally liable for HOPI's unpaid withholding taxes of $36,083.20, plus penalties and interest, but that Robblee's wife was not liable for any taxes.

On July 15, 1994, the Director of the department issued an opinion and order determining that Robblee, Maitland, and Garman were personally liable for HOPI's unpaid withholding taxes for the fourth quarter of 1989. Those three individuals challenged that determination in the Oregon Tax Court. The Tax Court held that all three were personally liable for HOPI's unpaid withholding taxes for the fourth quarter of 1989 and that the amount due (including interest) was $58,845.68 as of December 31, 1995. *Robblee*, 13 OTR at 514-15. Robblee and Maitland have appealed to this court.

Additional findings of fact will be incorporated, where appropriate, into the discussion below.

## ROBBLEE'S ARGUMENTS

Robblee makes three different kinds of arguments on appeal.

The first is procedural. Robblee contends that the department's determination of personal liability against him for HOPI's unpaid withholding taxes is invalid, because the procedure that the department used to notify him of his liability was improper.

Robblee's second argument relates to the scope of the relevant statute. He asserts that ORS 316.207, providing for personal liability of certain officers and employees for unpaid corporate withholding taxes, does not apply to "large" corporations such as HOPI.

The third argument is a claim for an unwritten exception to ORS 316.207. Robblee argues that the actions of HOPI's lender, CFC, relieved him of personal liability for unpaid withholding taxes.

We consider each of those arguments in turn.

A. *Procedures Followed Under ORS 316.207.*

Under Oregon law, most employers—including HOPI—must withhold, by a method designated by statute, a specified amount from wages paid to any employee. ORS 316.167(1). When an employer files a quarterly tax return, the employer must pay the amounts required to be withheld under ORS 316.167 for that same quarterly period. ORS 316.197(1)(a). ORS 316.207(3) describes the procedure when an employer files a withholding tax return but pays less than all the taxes due as shown in the return:

> "(a)   In the case of an *employer that is assessed pursuant to the provisions of ORS 305.265(12) and 314.407(1)*, the department may issue a *notice of liability* to any officer, employee or member described in ORS 316.162(3)(b)[2] of such employer within three years from the time of assessment. Within 30 days from the date the notice of liability is mailed to the officer, employee or member, such officer, employee or member shall pay the assessment, plus penalties and interest, or advise the department in writing of objections to the liability and, if desired, request a conference. Any conference shall be governed by the provisions of ORS 305.265 pertaining to a conference requested from a notice of deficiency.

> "(b)   After a conference or, if no conference is requested, a determination of the issues considering the written objections, the department shall mail the officer, * * * a conference letter affirming, canceling or adjusting the notice of liability. Within 90 days from the date the conference letter is mailed to the officer * * *, such officer * * * shall pay the assessment, plus penalties and interest, or appeal to the director * * *." (Emphasis added.)

As both parties acknowledge, ORS 316.207(3) applies here. ORS 316.207(3) in turn refers to these statutes:

> "If a return is filed with the department accompanied by payment of less than the amount of tax shown on or from the information on the return as due, the difference between the tax and the amount submitted is considered as

---

[2] ORS 316.162(3)(b) provides that the term "[e]mployer" means "[a]n officer or employee of a corporation * * * who as such officer [or] employee * * * is under a duty to perform the acts required of employers by ORS 316.167, 316.182, 316.197, 316.202 and 316.207." Robblee does not dispute that he falls within that definition.

*assessed* on the due date of the report or return * * * or the date the report or return is filed, whichever is later." ORS 305.265(12) (emphasis added).

"In the case of a return submitted to the department with payment of less than the amount of tax computed to be due, the difference between the tax computed to be owing by the *taxpayer* and the tax submitted with the return is considered as '*assessed*' on the due date of the return * * * or the date the return is filed, whichever is later." ORS 314.407(1) (emphasis added).

■    Robblee claims that the department failed to follow the foregoing procedures but, instead, improperly assessed him under ORS 316.207(4). ORS 316.207(4) applies to situations in which an employer has failed to file a withholding tax return at all, whereas ORS 316.207(3) applies when an employer files the required withholding tax return but fails to pay the amount due. Improper notice under ORS 316.207(4)(a), Robblee argues, resulted in a "premature assessment" and lien on his property. Robblee's argument that the department followed ORS 316.207(4) rests on the title of the document that he received; it was labeled a "Notice of Determination and Assessment," rather than a "Notice of Liability."

Robblee's argument is flawed for two reasons. First, the label on the document that the department sent to Robblee is not controlling. In substance, the notice contained the information that ORS 316.207(3) requires. It informed Robblee that the department deemed him to be personally liable for the unpaid withholding taxes as an officer of HOPI and that he was entitled to appeal the department's decision within the time limits prescribed by ORS 316.207(3).

Second, Robblee's assertion that he was assessed prematurely is incorrect. An employer that files a withholding tax return stating an amount due, but that pays less than the stated amount, self-assesses pursuant to ORS 305.265(12) and ORS 314.407(1). In that situation, an employer "is assessed" within the meaning of ORS 316.207(3)(a), and the department may issue notices of liability informing officers or employees of their personal liability

for any unpaid amount before holding a conference. ORS 316.207(3)(a). That is what happened here.

Robblee cites *Anaconda Company v. Dept. of Rev.*, 278 Or 723, 565 P2d 1084 (1977), to support his contention that the department's assessment is invalid due to procedural defects. In *Anaconda*, this court reversed a tax deficiency assessment ordered by the department, because the department had failed to provide a pre-assessment opportunity for a conference as required by statute. 278 Or at 725, 730. Robblee's reliance on that case is misplaced because, as discussed above, the department did follow statutory requirements in this case, and Robblee was able to take advantage of all the procedural protections afforded to him by ORS 316.207(3). Robblee's first argument is not well taken.

B. *Coverage of ORS 316.207.*

■ Next, Robblee argues that ORS 316.207 does not apply to HOPI, because it is a "large" corporation. He bases that argument on *Olson v. Dept. of Rev.*, 304 Or 241, 744 P2d 240 (1987). In *Olson*, this court stated that the legislation that became ORS 316.162(3)(b), the statute that defines the term "employer" for the purpose of the withholding tax law,[3] was intended "to reach small, closely held corporations." *Id.* at 244.

Whatever may have been the impetus behind the legislation defining "employer," *Olson* did not hold that the statute imposing personal liability on corporate officers and employees is limited in its application to small, closely held corporations. Rather, the only question of statutory interpretation that the court addressed was whether the "duty" to perform the acts required of employers under the withholding tax law, ORS 316.162(3)(b), refers to a duty to the state or a duty to the corporation. *Id.* at 243-44. This court held that the duty must be one owed by the officer or employee to the corporation. *Id.* at 244-47.

With respect to the present question, then, the usual rules of statutory construction apply. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143

---

[3] ORS 316.162(3)(b) is quoted in note 2, above. 325 Or at 522.

(1993) (setting out template for interpreting statutes). The text of ORS 316.162(3)(b) refers to "[a]n officer or employee of a corporation" without limitation as to the size or structure of the corporation. The context of that statute includes ORS 316.207(3), which provides a procedure for asserting personal liability against a corporate officer or employee. It similarly refers to "any officer [or] employee," without limitation as to the size or structure of the corporation. At the first level of analysis, we conclude that the meaning of ORS 316.162(3)(b) is clear and that the statute does not exclude "large" corporations from its coverage. Robblee's second argument is not persuasive.

C. *Actions of Corporate Lender.*

■ Robblee's final argument is that CFC's control over HOPI's finances prevented HOPI from paying its withholding taxes and that CFC's control thereby relieved him of personal liability. The evidence regarding the extent of CFC's control is in conflict. For example, Garman testified that a representative of CFC told him not to pay withholding taxes, while the CFC representative testified to the contrary. We need not resolve those factual disputes, however, because, under Oregon law, a lender's action of the kind alleged here does not relieve responsible officers and employees of their personal liability.

ORS 316.167(1) provides, in part:

"Every *employer* at the time of the payment of wages to any employee *shall* deduct and retain from such wages an amount determined [by the methods designated by statute designed to estimate state income taxes]." (Emphasis added.)

Employer is defined to include:

"An *officer or employee of a corporation*, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the acts required of employers by ORS 316.167 * * *." ORS 316.162(3)(b) (emphasis added).

Robblee concedes that he had a duty to HOPI to ensure the payment of withholding taxes and that ORS 316.162(3)(b) applies to him.

Under those statutes, an employer's duty to pay withholding taxes is mandatory. The statutes also make corporate officers and employees responsible if they owe a duty to the corporation to see that those payments are made. As this court noted in *Olson*, "[t]hose responsible to the corporation for the failure to comply with the withholding law are also responsible under ORS 316.162(3)(b)." 304 Or at 244. Those duties are not delegable. OAR 150-316.162(3)(2)(i).[4] *See also Olson*, 304 Or at 244 ("delegation [of administrative tasks] does not relieve the responsible officers of their responsibilities for seeing that the tasks are carried out").

■ ORS 316.167(3) does provide for lender liability under certain circumstances: when (a) the lender supplies funds to an employer for the purpose of paying employees' wages and (b) the lender "has actual notice or knowledge that such employer does not intend to or will not be able to make timely payment" of withholding taxes. Even in such circumstances, however, the lender's liability is limited to the amount loaned, "and any amounts so paid to the department *shall be credited against the liability of the employer*." ORS 316.167(3) (emphasis added). That wording implies that "the liability of the employer" remains otherwise undiminished. In other words, under Oregon law, a lender *also* can be held liable for unpaid withholding taxes, but that statute does nothing to relieve corporate officers of their own, separate liability.

In support of the proposition that a lender's controlling interference excuses an officer's or employee's personal liability for unpaid corporate withholding taxes, Robblee cites federal cases. *See, e.g., U.S. v. Vaccarella*, 735 F Supp 1421 (SD Ind 1990) (officers not liable, because asset-based lender controlled borrower's cash disbursements and payments to creditors), *aff'd by* 956 F2d 703 (7th Cir 1992); *Alsheskie v. U.S.*, 31 F3d 837 (9th Cir 1994) (corporation's chair/president not liable for taxes because of lender's control

---

[4] OAR 150-316.162(3)(2)(i) provides that "whether any functions establishing liability have been delegated to another" is a factor that "do[es] not preclude a finding that the individual is liable for the payment of taxes which were required to be withheld."

over finances). Assuming that the cited cases correctly apply federal law, they are not pertinent.

■ Although Oregon's tax system generally is patterned after the federal system, state and federal statutes relating to personal liability for withholding taxes are different. The applicable federal statute, 26 USC § 6672(a),[5] requires *willfulness* to establish officer liability. If a corporate officer shows that a failure to pay federal withholding taxes was beyond the officer's control, then the officer can establish a defense to the element of willfulness. By contrast, Oregon law requires no showing of willfulness and, thus, no defense on the ground of lack of willfulness is available. *See* OAR 150-316.162(3)(2)(a) (absence of willfulness does not preclude a finding that a corporate officer or employee is liable for the payment of unpaid corporate withholding taxes).

Robblee also argues that, in *Frutiger v. Department of Revenue*, 270 Or 821, 529 P2d 910 (1974), this court considered the possibility that lender control might excuse the personal liability of a corporate officer. However, *Frutiger* examined the issue whether a corporate officer was an "employer" for purposes of ORS 316.162(3)(b), not whether lender control could relieve an officer of liability for unpaid withholding taxes. Robblee's third argument is not well taken.

## MAITLAND'S ARGUMENT

Maitland's only argument on appeal is that he did not have the requisite level of control necessary to establish personal liability for HOPI's unpaid withholding taxes. OAR 150-316.162(3) elaborates on the definition of "employer" found in ORS 316.162(3)(b). OAR 150-316.162(3)(1) gives this nonexclusive list of factors that the department is to consider in determining whether a corporate officer or employee is an "employer" for purposes of the withholding law:

---

[5] 26 USC § 6672(a) provides, in part:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."

"(a)   the power or authority to see that the withholding taxes are paid when due;

"(b)   power or authority to prefer one creditor over another;

"(c)   authority to hire and fire employes;

"(d)   authority to set working conditions and schedules;

"(e)   authority to sign or co-sign checks;

"(f)   authority to compute and sign payroll tax reports;

"(g)   authority to make fiscal decisions of the corporation;

"(h)   authority to incur debt on behalf of the corporation;

"(i)   knowledge of the nonpayment of the withholding taxes;

"(j)   exercised authority on behalf of the corporation at or after the time the duty arose to collect and hold the taxes;

"(k)   exercised authority on behalf of the corporation at or after the time the duty arose to pay over the taxes required to be withheld; or

"(l)   performed duties other than those outlined by the corporate bylaws."

Moreover, OAR 150-316.162(3)(2) provides, in part:

"The following factors do not preclude a finding that the individual is liable for the payment of taxes which were required to be withheld:

"* * * * *

"(f)   absence of signatory authority on a corporate bank account[.]"

In defense of his position, Maitland claims that Robblee usurped whatever authority he had, that Maitland lacked knowledge of the nonpayment of taxes until December 1989, and that Maitland's authority to sign corporate checks was withdrawn before HOPI became delinquent in paying state withholding taxes. From the evidence in this record, however, we conclude that Maitland possessed sufficient indicia of authority to create personal liability.

█ Maitland was president and chief operating officer of HOPI at all times. The corporate bylaws gave Maitland "the usual executive powers pertaining to the office of [corporate] President." He had authority to make fiscal decisions on behalf of the corporation with respect to manufacturing and distribution. Maitland had the authority to hire and fire employees and the authority to set working conditions and schedules. Maitland also had authority to sign and co-sign checks until September 26, 1989. Even after that date, he continued to have supervisory authority over Garman, the chief financial officer of HOPI, who continued to have authority to sign checks. Maitland was aware of the nonpayment of withholding taxes at least from December 1989, and he knew by September 1989 that nonpayment of such taxes was a possibility. Indeed, it was that possibility that prompted him to seek withdrawal of his check-signing authority. Maitland knew that other creditors were being paid when HOPI was delinquent in paying Oregon withholding taxes, and there is no evidence that he tried to find a way for HOPI to pay those taxes.

In summary, Maitland meets the standards established in OAR 150-316.162(3)(1)(a), (c), (d), (g), (i), (j), and (k). It follows that Maitland's duties sufficed to bring him within the definition of "employer" in ORS 316.162(3)(b). *See Olson*, 304 Or at 246-47 & n 2 (corporate vice-president was personally liable for unpaid withholding taxes when he met OAR 150-316.162(3)(1)(a), (c), (d), (e), and (l)). The Tax Court was correct in so holding.

The judgment of the Tax Court is affirmed.