IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JOHN D. GANTES, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 111146N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals from Defendant's Conference Decision, dated July 15, 2011, finding

Plaintiff personally liable for unpaid withholding taxes for ten companies for certain quarters of

2008 and 2009. A telephone trial was held on April 25, 2012. Steven R. Mather (Mather), of

Kajan, Mather, and Barish PC, appeared on behalf of Plaintiff.[1] Plaintiff testified on his own

behalf. Susan Zwemke (Zwemke), Tax Auditor, appeared on behalf of Defendant. Plaintiff's

Exhibits 1 through 6 were offered and received without objection. Defendant's Exhibits A

through N were offered and received without objection.

## I. STATEMENT OF FACTS

Plaintiff appeals from Defendant's determination that Plaintiff is personally liable for

unpaid withholding taxes for the third and fourth quarters of 2008 and the first and fourth

quarters of 2009 (periods at issue) for 10 businesses: Pacific Pollo LLC, Breckenridge West

LLC, PNW Management Services Corp, OSSPRS LLC, OWEPL LLC, WOPS LLC, Palm Foods

Corp., Bearbreck Inc., Border Pacific LLC, and Orpacific Pollo LLC ("restaurant group"). (Ptf's

Compl at 10.) Plaintiff testified that, at the beginning of 2008, the restaurant group was part of

about 200 associated entities in the restaurant business, of which 10 to 15 operated in Oregon.

---

[1] Plaintiff granted Mather power-of-attorney.

DECISION TC-MD 111146N 1

Many of the businesses are franchisees. Plaintiff admits that he was the principal officer responsible for the restaurant group in 2008 and 2009.[2] He testified that he has an economics degree from Stanford, an MBA from UCLA, and has been involved in the restaurant business since the 1980s.

Plaintiff testified that the restaurant group began to experience financial difficulties in 2007. He testified that he sought "professional advice" and engaged counsel, Nanette D. Sanders (Sanders), as the "strategic point person" for financial consulting. (*See* Ptf's Ex 1 at 1.) Plaintiff testified that, in late 2008, as a result of pressure from lenders and creditors and on the advice of counsel, he decided to "step aside" and allow "third party" management of the restaurant group by "specialists." He testified that he hired Sanders and XRoads Solutions Group ("XRoads") on September 1, 2008,[3] to create a "restructuring strategy" and "reposition [the restaurant group] for financial success." (*See generally* Ptf's Ex 1.) Plaintiff testified that the role of XRoads was to manage cash flow and restructure the restaurant group through either bankruptcy or a "non-judicial process." He testified that lenders wanted a "clear vision" into the restaurant group and wanted experienced management. Plaintiff testified that he was not required to hire third party managers as a result of bankruptcy; most of the restaurant group businesses were not in bankruptcy as of the fourth quarter 2008.[4] He testified that the

/ / /

---

[2] Plaintiff is identified as the "Pres BGI, Its Mng Mem" for Breckenridge West LLC (Def's Ex B at 3, 5); as: "President" for PNW Management Services Corporation (Def's Ex C at 2); "Pres Mtn NW Ptrs, Inc Mng Mem" for OSSPRS LLC, OWEPL, LLC, and WOPS, LLC (Def's Ex D at 2, 3; Ex E at 3; Ex F at 4); "President" for Bearbreck, Inc. (Def's Ex H at 3); and "Pres Bearbreck, Inc, Mng Mem" for Border Pacific, LLC (Def's Ex I at 4.).

[3] Plaintiff's Engagement Agreement with XRoads states that "[t]he term of Engagement shall commence as of August 25, 2008. Either the Counsel or XRoads may terminate this Agreement upon ten (10) days advance written notice[.]" (Ptf's Ex 1 at 5.)

[4] Plaintiff testified on cross examination that a Burger King bankruptcy in late 2008 included some of the restaurant group businesses, but the majority of the businesses were not in bankruptcy.

period of engagement for XRoads ended during the fourth quarter 2008. Plaintiff testified that he was still a corporate officer for the restaurant group businesses as of September 2008.

Plaintiff testified that the restaurant group retained Trinity Capital Securities LLC ("Trinity") in October 2008. (*See* Ptf's Ex 2.) He testified that Trinity is similar to XRoads, but with more experience with restaurants; it is "well-regarded" by many restaurant franchises. Plaintiff testified that Trinity was retained for the same purposes as XRoads and was paid a "significant amount of money" for its work. He testified that Trinity had the authority to put together "cash plans" and had quite a bit of leeway to work with creditors. Plaintiff testified that the restaurant group entered into a third agreement with an independent contractor, Rick Haughey dba SLM Investments LLC, in October 2008. This contractor was also retained to provide financial "consulting and advisory services" to the restaurant group. (Ptf's Ex 3 at 1, 4.) Plaintiff testified that the three consultants "paid themselves" between $800,000 and $1 million during the fourth quarter 2008 and first quarter 2009. He testified that XRoads "paid themselves" about $500,000 for their work between September and November 2008.[5]

Plaintiff testified that, during the time the three consultants were engaged by the restaurant group, he was not aware that they were not paying employment taxes. He testified that the three consultants were "engaged to do all of this," so he took a "backseat" role. Plaintiff testified that he thought he was in a "follower" role during that time, not a "leader" role. He testified that XRoads was given "full reign" over managing cash flow and bill payments; his "signature stamp" was used by XRoads and the other consultants for checks and other documents. Plaintiff testified that he does not recall the consultants seeking his input or approval for decisions. He testified that, by January or February 2009, he had terminated the restaurant

---

[5] XRoads charged fees ranging from "$125 to $150 per hour" for "Administrator(s)" to "$550 to $650 per hour" for "Other Principal(s)" and required a retainer of $100,000. (Ptf's Ex 1 at 3.)

group's engagements with the three consultants because they were too expensive and he could not afford it. Plaintiff's testimony indicated that an additional reason for termination may have been dissatisfaction with the work performed by the three consultants. He agreed that, at all times, during the fourth quarter 2008 and first quarter 2009, he had the right to terminate his agreements with the three consultants.

Zwemke questioned Plaintiff regarding what happened to the employee withholding that was required by Oregon law to be held in trust. Plaintiff testified in response that he thought it all went into the general account from which all expenses were paid. He testified that, to the best of his knowledge, the restaurant group was in compliance with Oregon withholding tax in 2007. Plaintiff testified that most of the restaurant group entities were closed the fourth quarter 2008 or the first quarter 2009. The majority of the entities did not owe payroll tax after the first quarter 2009.

Defendant provided as exhibits checks, forms, and other reports from 2008 and 2009 including Plaintiff's signature. (Def's Exs A-J.) Plaintiff testified that, on all but one of those documents, his signature was made with the "signature stamp."[6] He testified that the majority of the forms and documents provided by Defendant were prepared by Richard Marino. (*See, e.g.,* Def's Ex A at 2.) Plaintiff testified that he may have seen the documents prepared by Richard Marino, but was not sure. He testified that he does not dispute the accuracy of the documents provided to Defendant including his signature stamp.

## II. ANALYSIS

The issue before the court is whether Plaintiff is personally liable for withholding taxes for the restaurant group for the fourth quarter 2008 and first quarter 2009. ORS 316.167 requires

---

[6] Plaintiff testified that the Combined Employer's Registration for PNW Management Services Corporation, dated "03/16/06" includes his signature, rather than the signature stamp. (Def's Ex C at 2.)

employers to "deduct and retain" withholding taxes from employee wages.[7] The money deducted by the employer is held in trust for the State of Oregon. ORS 316.207(1). Employers are required to prepare and file quarterly tax reports with the Department of Revenue (department). ORS 316.168(1), (2). "The report shall be accompanied by payment of any tax * * * due[.]" ORS 316.168(2)(a). Delinquent payments to the department by the employer accrue interest at the statutory rate prescribed under ORS 305.220. ORS 316.197(3). When, as here, the employer fails to remit any amount withheld, "the department may issue a notice of liability to any officer, employee or member described in ORS 316.162(3)(b)[.]" ORS 316.207(3)(a).

ORS 316.167 imposes an obligation on every "employer" to withhold income taxes from wages paid to employees. The legislature has imposed personal liability on "employers," those who have the duty to perform the obligation to withhold and pay such taxes. ORS 316.207(3). Plaintiff is liable for the unpaid withholding taxes of the restaurant group if Plaintiff was an "employer" during the periods in question. ORS 316.162(3) defines "employer" as:

> "(a) A person who is in such relation to another person that the person may control the work of that other person and direct the manner in which it is to be done; or

> "(b) An officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the acts required of employers by ORS 316.167, 316.182, 316.197, 316.202 and 316.207."

The department has promulgated an administrative rule, OAR 150-316.162(3), that sets forth a list of factors for determining whether a person is an "employer" under ORS 316.162. That rule states:

---

[7] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2007.

"(1) To be held personally liable for unpaid withholdings under ORS 316.162, a person must have been considered to have been an 'employer.' In addition, the person must have been in a position to pay the withholdings or direct the payment of the withholdings at the time the duty arose to withhold or pay over the taxes. Additionally, the person must have been aware, or have been in a position that should have been aware, that the withholdings were not paid to the department. An employer cannot avoid personal liability by delegating their responsibilities to another.

"(2) 'Employer' includes, but is not limited to an officer, member or employee of a corporation, partnership or other business entity, if, among other duties, that individual has:

"(a) The power or authority to see that the withholding taxes are paid when due;

"(b) Authority to prefer one creditor over another;

"(c) Authority to hire and dismiss employees;

"(d) Authority to set employees' working conditions and schedules;

"(e) Authority to sign or co sign checks;

"(f) Authority to compute and sign payroll tax reports;

"(g) Authority to make fiscal decisions for the business;

"(h) Authority to incur debt on behalf of the business; or

"(i) Performed duties other than those outlined by the corporate bylaws or partnership agreement.

"(3) The following factors do not preclude a finding that the individual is liable for the payment of taxes which were required to be withheld:

"(a) Whether the failure to pay over the required withholding was willful;

"(b) Whether the individual received remuneration;

"(c) Maintenance of full-time employment elsewhere;

"(d) The department considers another individual liable for the same withholding taxes;

"(e) A corporate bylaw or partnership agreement position description to the contrary;

"(f) Absence of signatory authority on a business bank account;

"(g) Absence of bookkeeping or recordkeeping duties;

"(h) Absence of authority to hire, fire, and to set working conditions and schedules; or

"(i) Whether any functions indicating liability have been delegated to another."

OAR 150-316.162(3).

Defendant argues that, under ORS 316.207, an employer has an obligation to hold employee withholding taxes in trust and remit those taxes to the department. Defendant argues that, under ORS 316.162(3) and OAR 150-316.162(3), Plaintiff is an "employer" within the meaning of ORS 316.207. (*See* Def's Answer.) Defendant notes that OAR 150-316.162(3)(3)(a) and (i) identify as "factors [that] do not preclude a finding that the individual is liable for the payment of taxes which were required to be withheld * * * [w]hether the failure to pay over the required withholding was willful; * * * * * and [w]hether any functions indicating liability have been delegated to another."

Plaintiff disagrees with Defendant's interpretation of the administrative rules and argues that, even though applicable Oregon laws and rules are stated in different terms than federal law, Oregon law is "not dissimilar" from federal law and is "functionally" the same as federal law with respect to withholding tax and willfulness. Plaintiff argues that, in order to find Plaintiff personally liable, he must have been both "responsible" for the withholding tax and must have acted "willfully," or with "knowledge," in failing to pay. Plaintiff argues that it was a business

/ / /

/ / /

necessity that he hire third party financial consultants to manage the restaurant group; the lenders and creditors demanded it. During the relevant time periods, Plaintiff was not aware that the third party financial consultants were not paying the restaurant group's withholding tax and Plaintiff, therefore, lacked the requisite knowledge. Plaintiff provided as support a determination by the Utah State Tax Commission finding in favor of Plaintiff on the "willfulness issue" and concluding that "the personal nonpayment penalty cannot be assessed against [Plaintiff]." (Ptf's Ex 4 at 4, 6.)

Plaintiff's argument that he is absolved of liability for unpaid withholding because he did not act "willfully" was rejected by the Oregon Supreme Court in *Robblee v. Dept. of Rev.* (*Robblee*), 325 Or 515, 942 P2d 765 (1997), in which the court stated:

> "Although Oregon's tax system generally is patterned after the federal system, state and federal statutes relating to personal liability for withholding taxes are different. The applicable federal statute, 26 USC § 6672(a), requires *willfulness* to establish officer liability. If a corporate officer shows that a failure to pay federal withholding taxes was beyond the officer's control, then the officer can establish a defense to the element of willfulness. By contrast, Oregon law requires no showing of willfulness and, thus, no defense on the ground of lack of willfulness is available. *See* OAR 150-316.162(3)(2)(a) (absence of willfulness does not preclude a finding that a corporate officer or employee is liable for the payment of unpaid corporate withholding taxes)."

*Id.* at 527 (emphasis in original) (footnote omitted). Thus, Plaintiff's position with respect to willfulness may be correct under federal law, but it is not pertinent to this court's determination.

In *Robblee*, the business made arrangements with its creditor for the creditor to "to receive all revenue from [the business'] operations and to make loan advances only for approved expenses." *Id.* at 519. The employer, Robblee, argued that the creditor's "control over [the business'] finances prevented [the business] from paying its withholding taxes and that [the

/ / /

/ / /

creditor's] control thereby relieved [Robblee] of personal liability." *Id.* at 525. The court

rejected that argument, stating:

> "[A]n employer's duty to pay withholding taxes is mandatory. The statutes also make corporate officers and employees responsible if they owe a duty to the corporation to see that those payments are made. * * * Those duties are not delegable. OAR 150-316.162(3)(2)(i). * * * [U]nder Oregon law, a lender *also* can be held liable for unpaid withholding taxes, but that statute does nothing to relieve corporate officers of their own, separate liability."

*Id.* at 526 (internal citations omitted).[8]

In *Gagon v. Dept. of Rev.*, 13 OTR 41 (1993), the plaintiff argued that he should be not

be held personally liable for unpaid withholding due to his perceived lack of control over

operations and his lack of knowledge regarding the unpaid withholding taxes:

> "[The p]laintiff saw himself as 'paid to take orders,' not to give them. * * * [The] plaintiff [did] not believe he had the control or authority necessary to carry out the duties contemplated by the statute. However, despite [the] plaintiff's views, he was the executive vice president and secretary of the corporation. As a member of the management committee he had the power and the responsibility to act. * * * [The p]laintiff testified he was not aware the withholding taxes were unpaid until May 9, 1988. When he did learn of this fact he left it up to [another principal of the corporation] to see that they were paid. [The p]laintiff believed there were sufficient corporate assets to cover the withholding liabilities."

*Id.* at 42-43. Nevertheless, the court concluded that:

> "[The p]laintiff view[ed] himself as outvoted and, therefore, not in control. He believe[d] this absolve[d] him from responsibility. However, the statute does not require the officer or employee to be in control. The law contemplates that more than one person may have the duty to see that withholding taxes are paid. Generally, officers with that duty will be personally liable unless relieved of it by higher authority. The court finds that [the] plaintiff is an employer within the meaning of ORS 316.162(3)."

*Id.* at 43, citing *Bellotti v. Dept. of Rev.*, 12 OTR 543 (1993).

---

[8] *See also Frutiger v. Department of Revenue*, 270 Or 821, 823, 824, 529 P2d 910 (1974), in which the court found the employer liable for unpaid withholding tax despite the fact that "the corporation engaged a consulting firm to determine basic problems and recommend solutions" and subsequently "entered into a financing agreement whereby [the corporation's] current accounts receivable were assigned to ['a corporation engaged in the factoring business'] in consideration of advances of 85 per cent of the face amounts of such accounts."

Here Plaintiff testified that, as result of pressure from lenders, he retained third party financial consultants to manage the finances of the restaurant group and create a "restructuring strategy." He testified that he was under the mistaken believe that the third party consultants were paying withholding tax. Plaintiff testified that he considered himself to be in a "backseat" role and a "follower" with respect to the third party consultants. It is unfortunate that Plaintiff misunderstood his continuing obligation for Oregon withholding tax despite his agreements with the third party consultants. Nevertheless, Plaintiff was the principal officer for the restaurant group businesses during the periods at issue and, as such, is liable for unpaid Oregon withholding taxes for those periods.

### III.  CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiff was an "employer" within the meaning of ORS 316.162(3) and is liable for unpaid withholding taxes for the restaurant group for the periods at issue. Plaintiff's appeal must, therefore, be denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of July 2012.

                                                           
ALLISON R. BOOMER
MAGISTRATE

***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This document was signed by Magistrate Allison R. Boomer on July 18, 2012. The Court filed and entered this document on July 18, 2012.***